UNITED STATES FOR THE BENEFIT OF SHERMAN ET AL., TRUSTEES, *v.* CARTER ET AL., DOING BUSINESS AS CARTER CONSTRUCTION CO., ET AL.

No. 48.   Argued December 5, 1956.—Decided April 29, 1957.

*Thomas E. Stanton, Jr.* argued the cause for petitioners. With him on the brief were *Gardiner Johnson* and *Charles P. Scully.*

*Richard C. Dinkelspiel* argued the cause for respondents. With him on the brief was *John W. Dinkelspiel.*

MR. JUSTICE BURTON delivered the opinion of the Court.

This case concerns the extent of the liability of the surety on a payment bond furnished by a contractor, as required by the Miller Act, for the protection of persons supplying labor for the construction of federal public buildings.[1] The collective-bargaining contract under

[1] ". . . (a) before any contract, exceeding $2,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds, which shall become binding upon the award of the contract to such person, who is hereinafter designated as 'contractor':

"(1) A performance bond with a surety or sureties satisfactory

which the laborers were hired obligated the contractor to pay them wages at specified rates and, in addition, to pay 7½ cents per hour of their labor to the trustees of a health and welfare fund established for their benefit and that of other construction workers. When the contractor failed

to the officer awarding such contract, and in such amount as he shall deem adequate, for the protection of the United States.

"(2) A payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person. . . .

"Sec. 2. (a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under this Act and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: *Provided, however,* That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. . . .

"(b) Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, irrespective of the amount in controversy in such suit, but no such suit shall be commenced after the expiration of one year after the date of final settlement of such contract. The United States shall not be liable for the payment of any costs or expenses of any such suit." 49 Stat. 793, 794, 40 U. S. C. §§ 270a (1)(2), 270b.

to pay in full the required contributions to the health and welfare fund, the trustees of the fund sued the surety on the contractor's payment bond to recover the balance due the fund, plus liquidated damages, attorneys' fees, court costs and expenses. For the reasons hereafter stated, we hold that § 2 (a) of the Miller Act imposes liability on the surety.

In November 1952, the respondent contractor, Donald G. Carter, contracted with the United States to construct certain public buildings at Air Force bases in California. As required by the Miller Act, he filed performance and payment bonds executed by the respondent, Hartford Accident and Indemnity Company, as surety. The payment bond was in the penal sum of $52,434.30, and provided that the obligation of the surety shall be void "if the principal shall promptly make payment to all persons supplying labor and material in the prosecution of the work provided for in said contract . . . otherwise to remain in full force . . . ."

The terms under which Carter employed laborers for the prosecution of the work were prescribed in master labor agreements governing the conditions of employment in the construction industry in 46 counties of northern California. Those agreements had been negotiated in June 1952 through collective bargaining between the local council of a labor union representing construction workers and several associations of employers, one of which acted as an agent for Carter. The agreements obligated Carter to pay wages to his employees at specified rates which were to be not less than the prevailing rates determined by the Government. The agreements required also that, beginning February 1, 1953, Carter was to pay to the trustees of a health and welfare fund 7½ cents for each hour worked by his construction employees.

The specified fund was established by a trust agreement dated March 4, 1953, and negotiated by the parties

to the master labor agreements. Its pertinent provisions were as follows: The fund was to be administered by a board of trustees representing employers and employees. The trustees were authorized to use employer contributions to purchase various types of insurance, such as life, accidental death, hospitalization and surgical benefit policies, with eligible employees and their dependents as the beneficiaries.[2] The employees had no rights to the insurance benefits except as provided in the policies. Also, they had no right, title or interest in the contributions, and it was expressly stated that the contributions "shall not constitute or be deemed to be wages" due the employees.

The trustees had the sole power to demand and enforce prompt payment of employer contributions. Those contributions were payable in monthly installments. Any installment not paid by the 25th of the month in which it came due was delinquent, and the sum of $20 per delinquency or 10% of the amount due, whichever was greater, was owed by the delinquent employer as liquidated damages and not as a penalty. If the trustees filed suit to secure payment of any installments, the defaulting employer was to pay the reasonable attorneys' fees, court costs and all other reasonable expenses of the trustees incurred in the litigation.

Carter became insolvent after completing the construction work and paying his employees the wages payable

---

[2] The trustees established by regulation the requirements for eligibility for insurance benefits. Any employee in the bargaining unit, whether or not a member of the laborers' union, could become eligible. Each employee was given a credit for every hour he worked for an employer obligated to contribute to the fund. Any employee who received credits for at least 400 hours in a designated six-month period was entitled to the benefits of the plan for the succeeding six months. His eligibility during that period did not depend on his further employment in the construction industry.

directly to them. However, he failed to make his required contributions to the fund for February, March and April 1953. Pursuant to § 2 (b) of the Miller Act, the trustees of the fund, in the name of the United States, instituted this action on the payment bond against Carter and his surety in the United States District Court for the Northern District of California. The complaint sought recovery of the unpaid contributions and the prescribed liquidated damages, attorneys' fees, court costs and expenses, in the total amount of about $500. The facts were stipulated and the court, after hearing, granted the surety's motion for summary judgment. The Court of Appeals affirmed, holding that the trustees had no right to sue on the bond under § 2 (a) of the Act, since they were neither persons who had furnished labor or material, nor were they seeking sums "justly due" such persons. 229 F. 2d 645. We granted certiorari to resolve the questions of statutory construction which are at issue. 351 U. S. 917.

Section 1 (a)(2) of the Miller Act provides that before any contract exceeding $2,000 for the construction of any public work of the United States is awarded to any person, such person shall furnish to the United States a payment bond with a satisfactory surety "for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract . . . ." 49 Stat. 793, 40 U. S. C. § 270a (2). Section 2 (a), which is at issue here, provides that "Every person *who has furnished labor or material* in the prosecution of the work provided for in such contract . . . and who has not been *paid in full* therefor . . . shall have the right to sue on such payment bond . . . for the sum or sums *justly due him* . . . ." (Emphasis supplied.) 49 Stat. 794, 40 U. S. C. § 270b (a).

The surety's liability on a Miller Act bond must be at least coextensive with the obligations imposed by the

Act if the bond is to have its intended effect. The bond involved here was furnished to meet the statutory requirements of the Act and appears, on its face, to comply with these requirements. There is no indication that the coverage of the bond was intended to exceed them. The bond insures prompt payment "to all persons supplying labor and material in the prosecution of the work provided for in said contract . . . ." The trustees' rights against the surety depend upon, and are to be measured by, the applicable provisions of § 2 (a) of the Act.

While the precise questions of statutory construction now presented are ones of first impression, prior decisions of this Court construing the Miller Act of 1935 and its predecessor, the Heard Act of 1894,[3] indicate that the Miller Act should receive a liberal construction to effectuate its protective purposes.

> "The Miller Act, like the Heard Act, is highly remedial in nature. It is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects. *Fleisher Engineering Co.* v. *United States,* 311 U. S. 15, 17, 18; cf. *United States* v. *Irwin,* 316 U. S. 23, 29, 30. But such a salutary policy does not justify ignoring plain words of limitation and imposing wholesale liability on payment bonds." *Clifford F. MacEvoy Co.* v. *United States,* 322 U. S. 102, 107.

The Miller Act represents a congressional effort to protect persons supplying labor and material for the construction of federal public buildings in lieu of the protection they might receive under state statutes with respect to the construction of nonfederal buildings. The

---

[3] Act of August 13, 1894, 28 Stat. 278, as amended, 33 Stat. 811, 36 Stat. 1167. See 40 U. S. C. (1934 ed.) § 270.

essence of its policy is to provide a surety who, by force of the Act, must make good the obligations of a defaulting contractor to his suppliers of labor and material. Thus the Act provides a broad but not unlimited protection.[4]

It is undisputed that if the collective-bargaining agreement had required the contractor to pay each employee $7\frac{1}{2}$ cents per hour above the prevailing wage rate, and the employee had, by contract with his bargaining representative, agreed to contribute that sum to the fund, the surety would have been obligated to make good any default in the contractor's payment of that extra $7\frac{1}{2}$ cents per hour. The surety argues that employer contributions made directly to a health and welfare fund should be treated differently. It contends that, under the provisions of the trust agreement, the unpaid contributions are not "wages" due to Carter's employees, and that the employees, having received all the "wages" owed to them, have been "paid in full" as that term is used in § 2 (a) of the Act. The Act, however, does not limit recovery on the statutory bond to "wages." The parties have stipulated that contributions to the fund were part of the consideration Carter agreed to pay for the services of laborers on his construction jobs. The unpaid contributions were a part of the compensation for the work to be done by

---

[4] One limitation, inapplicable here, comes from the proviso in § 2 (a). See n. 1, *supra*. In the *MacEvoy Co.* case, *supra*, this Court concluded that the effect of the proviso was to limit the right to bring suit on the bond to "(1) those materialmen, laborers and subcontractors who deal directly with the prime contractor and (2) those materialmen, laborers and sub-subcontractors who, lacking express or implied contractual relationship with the prime contractor, have direct contractual relationship with a subcontractor and who give the statutory notice of their claims to the prime contractor." 322 U. S., at 107–108. Here the trustees of the fund are claiming sums on behalf of workmen who supplied labor for the project directly to the contractor under an express contractual relationship with him.

Carter's employees. The relation of the contributions to the work done is emphasized by the fact that their amount was, measured by the exact number of hours each employee performed services for Carter. Not until the required contributions have been made will Carter's employees have been "paid in full" for their labor in accordance with the collective-bargaining agreements.

The surety suggests that Carter's obligation to contribute to the fund was not covered by the statutory bond because that obligation was not set forth in his construction contract with the United States, but appeared only in the master labor agreements. Those labor agreements were also the source of Carter's obligation to pay the "wages" payable directly to his employees, an obligation concededly guaranteed by the bond. Nothing in the Miller Act restricted the obligations of the surety to what was set forth specifically in Carter's agreement with the United States. In fact, the surety's obligations extended to some persons who had no contractual relationship with Carter. For example, persons who contributed labor and material to Carter's subcontractors were entitled to the Act's protection. See the *MacEvoy Co.* case, *supra,* at 105, 107–108. As long as Carter's obligations relating to compensation for labor have not been satisfied, his employees will not have been "paid in full" and the Miller Act will not have served its purpose.

The surety also argues that the trustees are not entitled to recover the promised contributions under § 2 (a) of the Miller Act, since they are neither persons who have furnished labor or material, nor are they seeking "sums justly due" to persons who have furnished labor or material. An answer to this contention is found in cases arising under the Heard Act involving suits by assignees of the claims of persons furnishing labor or material. Such assignees were not the persons who had furnished the

labor or material for which the claims were made. They did not seek "sums justly due" to persons who had themselves furnished labor or material, since the assignments had extinguished the right which those persons had to the performance of the contractors' obligation.[5] Yet these cases established that assignees of the claims of persons furnishing labor or material came within the protection of the statutory bond.[6] It was pointed out that a denial of an assignee's right to sue on the bond might deprive those for whom the security was intended of a fair chance to realize upon their claims by assignment.[7] There is nothing in the language, legislative history, or related decisions to indicate that Congress intended to overturn these cases when it replaced the Heard Act with the broader and more liberal provisions of the Miller Act.[8]

If the assignee of an employee can sue on the bond, the trustees of the employees' fund should be able to do so. Whether the trustees of the fund are, in a technical sense,

[5] 4 Corbin, Contracts (1951 ed.), § 891; Restatement, Contracts, § 150. See also, *Looney* v. *District of Columbia,* 113 U. S. 258; *Blair* v. *Commissioner,* 300 U. S. 5.

[6] *Title Guaranty & Trust Co.* v. *Crane Co.,* 219 U. S. 24, 35; *U. S. Fidelity & Guaranty Co.* v. *Bartlett,* 231 U. S. 237, 243; *United States* v. *Rundle,* 100 F. 400, 403; *United States* v. *Brent,* 236 F. 771, 777; *Bartlett & Kling* v. *Dings,* 249 F. 322, 325.

[7] See *United States* v. *Rundle, supra.*

[8] See *United States* v. *Conn,* 19 F. R. D. 274, 277. In *Clifford F. MacEvoy Co.* v. *United States,* 322 U. S. 102, 105–106, this Court concluded that—

"The Miller Act, while it repealed the Heard Act, reinstated its basic provisions and was designed primarily to eliminate certain procedural limitations on its beneficiaries. There was no expressed purpose in the legislative history to restrict in any way the coverage of the Heard Act; the intent rather was to remove the procedural difficulties found to exist under the earlier measure and thereby make it easier for unpaid creditors to realize the benefits of the bond."

assignees of the employees' rights to the contributions need not be decided. Suffice it to say that the trustees' relationship to the employees, as established by the master labor agreements and the trust agreement, is closely analogous to that of an assignment. The master labor agreements not only created Carter's obligation to make the specified contributions, but simultaneously created the right of the trustees to collect those contributions on behalf of the employees. The trust agreement gave the trustees the exclusive right to enforce payment. The trustees stand in the shoes of the employees and are entitled to enforce their rights.

Moreover, the trustees of the fund have an even better right to sue on the bond than does the usual assignee since they are not seeking to recover on their own account. The trustees are claiming recovery for the sole benefit of the beneficiaries of the fund, and those beneficiaries are the very ones who have performed the labor. The contributions are the means by which the fund is maintained for the benefit of the employees and of other construction workers. For purposes of the Miller Act, these contributions are in substance as much "justly due" to the employees who have earned them as are the wages payable directly to them in cash.

The trustees' claim for liquidated damages, attorneys' fees, court costs and other related expenses of this litigation has equal merit. The contractor's obligation to pay these items is set forth in the trust agreement. It is stipulated that they form a part of the consideration which Carter agreed to pay for services performed by his employees. If the employees are to be "paid in full" the "sums justly due" to them, these items must be included. Their amount, however, remains to be determined.

We hold that the Miller Act makes the surety liable on its payment bond for the delinquent contributions to the

fund, together with the additional items above described. The judgment of the Court of Appeals, therefore, is reversed and the cause is remanded to the District Court for further action consistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE WHITTAKER took no part in the consideration or decision of this case.