Matter of EMBASSY RESTAURANT, Inc., Bankrupt,
UNITED STATES of America, Appellant.

No. 12323.

United States Court of Appeals
Third Circuit.

Argued Jan. 8, 1958.
Decided April 16, 1958.

George F. Lynch, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Attorneys, Department of Justice, Washington, D. C., Harold K. Wood, U. S. Atty., Louis C. Bechtle, Asst. U. S. Atty., Philadelphia, Pa., on the brief), for appellant.

Richard H. Markowitz, Philadelphia, Pa. (Wilderman & Markowitz, Louis H. Wilderman, Marshall J. Seidman, Philadelphia, Pa., on the brief), for appellees.

Jerome L. Markovitz, Philadelphia, Pa. (William J. Isaacson, New York City, Markovitz, Stern & Shusterman, Philadelphia, Pa., on the brief), for Philadelphia Joint Board, Amalgamated Clothing Workers of America.

Before MARIS, McLAUGHLIN and STALEY, Circuit Judges.

STALEY, Circuit Judge.

The achievement of complete economic security for industrial workers is the ultimate aspiration of the American labor movement. One method of attaining a measure of this security is the union welfare fund maintained to provide employees with life insurance, hospital and surgical benefits, sick pay, and other advantages. Under virtually all arrangements for a welfare fund, the collective bargaining agreement obligates the employer to contribute a certain sum of money periodically to the fund. Whether these employer contributions are entitled to preference under Section 64, sub. a(2) of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a(2), as "wages * * * due to workmen" is the inquiry presented on this appeal.

The facts are not disputed. A collective bargaining agreement was entered into by the employer and the union on March 21, 1951. After recognizing the union as the exclusive bargaining agent, the agreement dealt with the accustomed provisions relating to discharge, lay-off, seniority, vacations, hours, wages, holidays, and other employment conditions. It contained also provisions for sick leave with pay.

On September 1, 1951, the bargaining agreement was amended to render ineffective the sick leave benefits as to certain types of employees. In this supplemental agreement, the employer agreed to pay a certain monthly sum into the union welfare fund for each member of the union in its employ.

On July 1, 1956, another collective bargaining agreement was executed providing that the employer pay into the welfare fund monthly the sum of $8 for each of its employees who are union members. This was the agreement in effect on the date the employer was adjudged a bankrupt.

A written Agreement and Declaration of Trust, dated December 13, 1951, outlined the administration of the union welfare fund.[1] It provided generally for employee welfare benefits and authorized the trustees to file claims for priority of payment of the employer's contribution to the fund in any proceeding involving an insolvent employer. Finally, it specified the application of Pennsylvania law to any questions involving the trust's validity or administration.

The trustees of the welfare fund filed proofs of claim in the employer's bankruptcy proceeding, seeking priority as wage claimants for the unpaid employer contributions to the fund which had accrued in the three months prior to bankruptcy. In the same proceeding, the United States filed a lien claim for unpaid taxes. The referee denied the unpaid employer contributions to the welfare fund the status of wages within Section 64, sub. a(2), and relegated the amounts to the status of payments due unsecured creditors. The district court vacated the referee's order and granted wage priority to the employer contributions. D.C.E.D.Pa.1957, 154 F.Supp. 141. The appeal of the United States followed.

The Chandler Act provides in Section 64, sub. a, 11 U.S.C.A. § 104, sub. a, for debts which have priority over general unsecured claims, and designates the order of payment, so far as is relevant here, as follows:

"* * * (2) wages not to exceed $600 to each claimant, which have been earned within three

---

[1]. There are two trust funds involved in this case, but because the facts of each are the same, we treat them as one.

months before the date of the commencement of the proceeding, due to workmen, servants, clerks, or traveling or city salesmen on salary or commission basis, whole or part time, whether or not selling exclusively for the bankrupt * * * (4) taxes legally due and owing by the bankrupt to the United States or any State or any subdivision thereof * * *."

It is undisputed that the amounts of unpaid employer contributions do not exceed $600 to each claimant and that the sums were earned within three months of bankruptcy. The narrow issue remaining for determination by this court is whether the employer's payments to a union welfare fund pursuant to a collective bargaining agreement are "wages * * * due to workmen" within the purview of Section 64, sub. a(2).

The resolution of this precise issue has met with a diversity of judicial opinion in the federal courts. The Second Circuit has dealt with the problem in Local 140 Security Fund v. Hack, 242 F.2d 375, certiorari denied 1957, 355 U.S. 833, 78 S.Ct. 51, 2 L.Ed.2d 45, where the employer contributions to the fund there involved were denied the status of wage claims. The court decided that if the term "wages" was to be enlarged beyond its normal definition, this was a legislative and not judicial function. The concurring opinion observes that the fund was not a "workman" within the

meaning of Section 64, sub. a(2). A district court in California arrived at an opposite decision in the case of In re Otto, S.D.Cal.1956, 146 F.Supp. 786. There it was held that employer contributions to a welfare fund represented merely another method of computing wages and should therefore be given the wage priority provided for in Section 64, sub. a(2).

In our own circuit, two district courts have taken opposite stands. The district court in the present case followed the rationale and conclusions of the Otto case, while the district court for the District of New Jersey chose to follow the rule of the Second Circuit in the Hack case. In re Victory Apparel Mfg. Corp., D.C.1957, 154 F.Supp. 819.

Union Funds providing welfare benefits to employees through employer contributions contracted for in collective bargaining agreements play an essential and ever growing part in our industrial economy. We are firmly convinced that unions bargain for these contributions as though they were wages, and further that industry considers the contributions as an integral part of the wage package. See Note, 66 Yale L.J. 449, 460 (1957). The contributions are in a true sense the agreed compensation for services rendered and as such must be considered wages.[2] For this reason we are constrained to disagree with the view of the Second Circuit in the Hack decision and

---

2. The National Labor Relations Act makes it an unfair labor practice for an employer to refuse to bargain collectively with respect to "rates of pay, *wages*, hours of employment, or other conditions of employment." 29 U.S.C.A. §§ 158(a) (5) and 159(a). It has been held that since the benefits of pension and insurance plans are within the scope of the term "wages" the plans are proper subjects of collective bargaining. In the case of Inland Steel Co. v. N.L.R.B., 7 Cir., 1948, 170 F.2d 247, 251, 12 A.L.R. 2d 240, certiorari denied, 1949, 336 U.S. 960, 69 S.Ct. 887, 93 L.Ed. 1112, the court quoted from the Board's opinion with approval:

"'With due regard for the aims and purposes of the Act and the evils which

it sought to correct, we are convinced and find that the term "wages" as used in Section 9(a) must be construed to include emoluments of value, like pension and insurance benefits, which may accrue to employees out of their employment relationship. * * * Realistically viewed, this type of wage enhancement or increase, no less than any other, becomes an integral part of the entire wage structure, and the character of the employee representative's interest in it, and the terms of its grant, is no different than in any other case where a change in the wage structure is effected.'"
See also N.L.R.B. v. Black-Clawson Co., 6 Cir., 1954, 210 F.2d 523; W. W. Cross & Co. v. N.L.R.B., 1 Cir., 1949, 174 F.2d 875.

to affirm the decision of the district court here.

Since the opinion in the Hack case was rendered, the Supreme Court has expressed its view of the relationships created by the union welfare funds and the character of the employer contributions to such funds. In United States for Benefit and on Behalf of Sherman v. Carter, 1957, 353 U.S. 210, 77 S.Ct. 793, 794, 1 L.Ed.2d 776, the trustees of a welfare fund sued the employer and his surety to recover unpaid contributions, the action being brought pursuant to the Miller Act, 40 U.S.C.A. §§ 270a and 270b. That statute requires that a payment bond be furnished by a contractor working on the construction of federal public buildings, and provides that "Every person who has furnished labor * * * and who has not been paid in full therefor * * * shall have the right to sue on such payment bond * * * for the sum or sums justly due him * * *." 40 U.S.C.A. § 270b(a). The Supreme Court there was confronted with the issues of whether the trustees of the fund could sue as a "person who has furnished labor" and whether the unpaid employer contributions were "sums justly due him." The Court permitted the action and its unanimous opinion bears persuasively on the case here for decision.

The bargaining agreement in the Carter case was similar to the agreement in this case, except that the employer was to pay into the welfare fund 7½ cents for each employee hour worked. The government suggests that when the welfare fund contributions in bargaining agreements are measured by a percentage of the wage earned there exists a basis for distinguishing such an arrangement from the situation where the employer pays a flat monthly sum for every employee. This seems to urge a distinction analogous to the difference between a wage and a salary; Section 64, sub. a(2) does not make that distinction, and neither do we. The Supreme Court in the Carter case found it unnecessary to decide whether employer contributions to the welfare fund were technically wages assigned by the employees. It did decide that the trustees could sue on behalf of the employees to protect the employees' rights. The Court then made the following particularly relevant observation, 353 U.S. at page 220, 77 S.Ct. at page 798:

> "* * * the trustees of the fund have an even better right to sue on the bond than does the usual assignee since they are not seeking to recover on their own account. The trustees are claiming recovery for the sole benefit of the beneficiaries of the fund, and those beneficiaries are the very ones who have performed the labor. The contributions are the means by which the fund is maintained for the benefit of the employees and of other construction workers. For purposes of the Miller Act, *these contributions are in substance as much 'justly due' to the employees who have earned them as are the wages payable directly to them in cash.*" [Emphasis supplied.]

Like Section 64, sub. a(2) of the Chandler Act, the Miller Act sought to protect employees by guaranteeing to them the wages they have earned. We see no reason to treat employer contributions in one way under the Miller Act and in another under the Chandler Act.

The decision of the district court will be affirmed.