TRIANGLE ELECTRIC SUPPLY COMPANY, Inc., Plaintiff,

v.

MOJAVE ELECTRIC COMPANY et al., Defendants.

No. 1886.

United States District Court
W. D. Missouri, S. D.

June 20, 1963.

Lathrop, Righter, Gordon & Parker, Kansas City, Mo., for plaintiff.

Rafter & Biersmith, Watson, Ess, Marshall & Enggas, Kansas City, Mo., for defendants.

JOHN W. OLIVER, District Judge.

In United States v. Travelers Indemnity Co., W.D.Mo., 1963, 215 F.Supp. 455, 475, we noted that our view in regard to the question of whether attorneys' fees and pre-judgment interest are recoverable in a so-called Capehart bond case would be announced in a subsequent memorandum and order.

One facet of that question is presented by plaintiff's motion for summary judgment on Count I of its amended complaint. Under the stipulation of the parties and a pre-trial order entered after several pre-trial conferences, it is apparent that plaintiff's motion is ripe for determination in that it is agreed that "there now exists no genuine issue as to any material facts".

Plaintiff Triangle Electric Supply Co., Inc., furnished certain electrical supplies to Mojave Electric Company, a subcontractor of D & L Construction Co. and Associates, the prime contractor for the construction of the Fort Leonard Wood residential housing units fully discussed in the Travelers Indemnity case. Continental Casualty Company bonded D & L. It is agreed that "the reasonable value of [the] electrical materials was in the aggregate sum of $14,592.12".

It is further agreed that:

"All of the invoices of plaintiff Triangle to Mojave for materials

here involved contain the following provision:

"'All past due invoices bear interest at the rate of 6% per annum. Should it become necessary to place this or any subsequent invoice in the hands of an attorney for collection, reasonable attorneys' fees shall be added.'

Said provision expresses Triangle's usual and normal terms of sale and constitute a part of the contract of purchase and sale between plaintiff Triangle and Mojave Electric Company."

The parties also stipulated in regard to their respective claims and the questions for decision as follows:

(a) "If plaintiff Triangle is entitled to interest, said interest shall run from date of plaintiff's demand letter of March 28, 1960 to the defendants D & L and Continental, and such interest shall be calculated at the rate of six per cent per annum. * * * Defendants deny that interest is allowable on an award on such bond. This is an issue of law to be determined by the Court."

"(b) Plaintiff claims that if a recovery is allowed it for the principal amount of its claim under the payment bond in question, it is also entitled to an allowance for attorneys' fees. Defendants deny that any attorneys' fees can be awarded in connection with a recovery on the bonds in question. This is an issue of law to be determined by the Court."

The lengthy briefs of the parties were filed before our decision in Travelers Indemnity. What we said there—and we here expressly adopt all applicable language—makes it unnecessary to deal in detail with many of the arguments in those briefs. In Travelers Indemnity we held, for the reasons there stated in detail, that "the rules of decision that will be applied to the factual situations involved in the various cases will be the rules of decision developed under the Heard and Miller Act decisions".

The quite narrow question presented in this case is whether interest and attorneys' fees are recoverable from the surety on the prime contractor's bond when the contract of purchase and sale between plaintiff Triangle [a supplier to a subcontractor] and Mojave Electric Company [a subcontractor of the prime contractor] provides that all past due invoices bear interest at the rate of 6% and also provides for reasonable attorneys' fees in the event it becomes necessary to place the claim in the hands of an attorney. What we determine here does not reach or rule the question of whether attorneys' fees and interest may be recovered in a case where no agreement existed between the supplier and the subcontractor as to those items. We here intimate no ruling on that separate question. We rule this case on its distinct facts.

The point of beginning is Continental Casualty Co. v. United States for the Use and Benefit of Robertson Lumber, 8th Cir., 1962, 305 F.2d 794, 799, cert. denied 371 U.S. 922, 83 S.Ct. 290, 9 L. Ed.2d 231. That case, controllingly so far as we are concerned, held that "Congress intended that Capehart suppliers should have substantive bond protection essentially similar to that afforded Miller Act suppliers" [l. c. 799 at 305 F.2d]. There is no question but that plaintiff is a "Capehart supplier" and therefore entitled to "protection essentially similar to that afforded Miller Act suppliers".

Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206 (1917), held that the recovery of interest was within the substantive bond protection afforded a Miller Act supplier. We will follow that case.

United States for Benefit and on Behalf of Sherman v. Carter, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957), is particularly in point in regard to attorneys' fees. That case illustrates that if the agreement between the supplier and the contractor fixes the obligation to pay

items not strictly classified as labor or material items, resort to state law is unnecessary to spell out the amounts "justly due" a particular supplier. Carter directly involved "the extent of the liability of the surety in a payment bond furnished by a contractor, as required by the Miller Act, for the protection of persons supplying labor for the construction of federal public buildings". By express contract, the contractor agreed to pay 7½¢ for each hour worked by his construction employees to the trustees of a health and welfare fund. The contractor also expressly agreed that if it became necessary for the trustees of the fund to file suit for any of the health and welfare payments, the contractor would become obligated to pay certain liquidated damages and "to pay the reasonable attorneys' fees, court costs and all other reasonable expenses of the trustees incurred in the litigation". The contractor failed to make the health and welfare payments. Both the District Court and the Court of Appeals held for the surety. The Supreme Court reversed.

Consistent with prior decisions concerning both the Heard and Miller Acts, the Supreme Court held that "[t]he essence of its [the Miller Act's] policy is to provide a surety who, by force of the Act, must make good the obligations of a defaulting contractor to his suppliers of labor and material". The surety's obligation to make good the obligations of a defaulting subcontractor is no less than its obligation concerning a prime contractor because, as pointed out in John Davis Co., "the Surety Company could protect itself by insisting that the contractor require a bond from all subcontractors and assignees" [l. c. 381 of 244 U.S., l. c. 616–617 of 37 S.Ct., 61 L.Ed. 1206].

In Carter, the Supreme Court held that the contributions to the welfare fund were "justly due" the employees and therefore within the protection of the bond. In regard to attorneys' fees and the other items included in the agreement of the contractor, it was held (l. c.

220 of 353 U.S., l. c. 798–799 of 77 S.Ct., 1 L.Ed.2d 776]:

"The trustees' claim for liquidated damages, attorneys' fees, court costs and other related expenses of this litigation has equal merit. The contractor's obligation to pay these items is set forth in the trust agreement. It is stipulated that they form a part of the consideration which Carter agreed to pay for services performed by his employees. If the employees are to be 'paid in full' the 'sums justly due' to them, these items must be included. * * We hold that the Miller Act makes the surety liable on its payment bond for the delinquent contributions to the fund, together with the additional items above described."

We believe the rationale of Carter is controlling. We so hold.

The parties have stipulated that plaintiff's interest shall run from the date of plaintiff's demand letter of March 28, 1960; that the interest computed to September 1, 1962 amounts to $2,120.72; and that it is accruing at the rate of $2.40 per day. Our final order will bring the calculation of interest up to date. In regard to attorneys' fees, plaintiff's counsel has submitted a lengthy affidavit and the parties have agreed that such affidavit may be considered by the Court and that it make a determination, without hearing further evidence, of what would be a fair and reasonable attorneys' fee for the services rendered. We would be hopeful that counsel for the interested parties may be able to include an agreed specific figure as to what is fair and reasonable. We therefore will make no determination until counsel have an opportunity to confer with each other concerning this subject to see if an agreement as to amount may be reached.

In order that all motions presently pending be ruled, the Court is inclined to believe that pleadings filed subsequent to D & L's motion for summary judgment on its amended cross claim may have mooted that motion. Whether or not this be true, we have considered that mo-

tion on the merits and are of the opinion that sufficient disputed facts lurk in the record so as to make summary judgment procedure on the cross claim inappropriate at this time. We therefore overrule all motions other than plaintiff's motion for summary judgment on Count I without prejudice. The latter motion, of course, should be and is hereby sustained.

The parties will confer as suggested and thereafter plaintiff will prepare a form of order, submit the same to the other parties for approval as to form, and submit said order for approval within fifteen (15) days of this Memorandum and Order.

It is so ordered.