OPINION OF THE COURT
Thomas A. Stander, J.
Plaintiffs commenced the instant action by filing a complaint seeking recovery of sums allegedly owed to them by Industrial Contracting, Inc. (Industrial). The basis of this action is a written surety payment bond executed by defendant Washington International Insurance Company (Washington), dated September 1, 1995 (Bond), naming defendant D. R. Chamberlain Corporation (Chamberlain) as principal. The Bond relates to a project undertaken by Chamberlain as general contractor for Niagara University. Chamberlain, in turn, subcontracted a portion of its work to Industrial.
Industrial was a party to a certain collective bargaining agreement with the plaintiff Iron Workers Local Union No. 9 (Union). Pursuant to that collective bargaining agreement, Industrial also agreed to remit contributions to the Iron Workers District Council of Western New York and Vicinity Welfare and Pension Funds, the Local No. 9 Ironworkers Apprenticeship Training Program Trust, and the Ironworkers Local No. 9 Supplemental Benefit Fund (collectively the Funds) at a rate determined by the total number of hours worked for Industrial by union laborers. The terms and obligations relating to required payments to the Funds were established within various agreements and declarations of trust. Those agreements and declarations of trust were not executed by Industrial, but were referenced within the collective bargaining agreement between Industrial and the Union.
During December 1995 and January 1996, Industrial apparently employed workers to perform labor pursuant to its subcontract with Chamberlain, which workers were referred to Industrial by the Union. Industrial allegedly failed to remit contributions and deductions to the Union and the Funds based upon the total hours worked by those workers. The plaintiffs *1013 seek recovery of those delinquent contributions and deductions from the defendants based solely upon the Bond. Defendants filed the present motion to dismiss in lieu of an answer. The plaintiffs filed a cross motion seeking summary judgment.
The complaint alleges three of the plaintiffs are third-party beneficiaries of a collective bargaining agreement between Union No. 9 and Industrial, an iron work subcontractor on a private improvement project at Niagara University. Industrial performed its contract with Chamberlain and was paid. However, Industrial neglected to pay over to the plaintiffs $32,031.45 in welfare fund and pension fund contributions, $10,399.54 in Local No. 9 training and supplemental benefit contributions and $3,835.89 in dues deductions. All of this was required by a collective bargaining agreement and declarations of trusts among the plaintiffs. All of which is now claimed to be due the plaintiffs plus interest, damages, costs and attorney’s fees. The above sums are calculated on the total number of hours union members work and are payable “in addition to” wages, which are also set out in the collective bargaining agreement. Neither defendant has signed the collective bargaining agreement or otherwise directly agreed to be a party to that document.
PRELIMINARY MATTERS
1. Treated as Motion for Summary Judgment
Upon review of the affidavits and documentary evidence submitted by both plaintiffs and defendants, it is clear there are no genuine issues of material fact in this action. Given defendants’ admissions and the parties’ agreement this motion turns upon the court’s interpretation of the Bond. Judicial economy justifies conversion of defendants’ motion to dismiss the complaint to a motion for summary judgment. The parties clearly charted a course for summary judgment. They were given notice of the court’s decision to convert defendants’ motion to one for summary judgment and to entertain plaintiffs’ cross motion for summary judgment. They were also given an additional 30 days to raise any issues or defenses and to submit any evidence to the court, as well as an additional 15 days beyond that to submit evidence in reply to each other’s supplemental submissions.
2. ERISA
The threshold issue of preemption by means of the Employee Retirement Income Security Act (29 USC § 1144 [ERISA]) is
*1014 avoided because this court need not decipher plaintiffs’ labor agreements. “A claim on a surety bond is but a ‘run-of-the-mill state law claim[]’”. (Greenblatt v Delta Plumbing & Heating, 68 F3d 561, 574 [2d Cir 1995].) This court need only refer to the collective bargaining agreement and the various agreements and declarations of trust solely for the purpose of determining the status of the plaintiffs as potential claimants under the Bond.
DECISION
In bringing their initial motion to dismiss, the defendants requested this court interpret the terms of the Bond as a contractual instrument as a matter of law. The plaintiffs, in opposition to the motion to dismiss and in support of their cross motion, have submitted documentation including the executed collective bargaining agreement and the various agreements and declarations of trust pertaining to the sums allegedly due to the plaintiff Funds.
The Bond in question provides, in pertinent part:
“Now therefore, the condition of this obligation is such that, if principal shall promptly make payments to all claimants as hereinafter defined, for all labor and materials used or reasonably required for use in the performance of the contract (between principal D.R. Chamberlain and obligee Niagara University), then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:
“1. A claimant is defined as one having a direct contract with the principal (D.R. Chamberlain) or with a subcontractor of the principal for labor, material, or both, used or reasonably required for use in the performance of the contract”.
The Bond further provides that such a “claimant” may sue on the Bond, “for such sum or sums as may be justly due claimant”. Thus, the primary issues this court must determine are whether the plaintiffs meet the definition of a “claimant” under the Bond, and whether the sums sought by the plaintiffs may be covered by the term “labor” as used in the Bond.
Federal statutory bonds are issued pursuant to the Miller Act (40 USC § 270a et seq.). Since 1956 such bonds which secure “wages” have been held to include the supplemental benefits sued for herein because the Supreme Court found they were “sums justly due”. (United States v Carter, 353 US 210.) So too, State Finance Law § 137 statutorily includes in “wages” health and fringe benefits in public works projects. Because *1015 these statutes are remedial in nature the courts have given them liberal interpretations by not limiting a payment bond to hourly wages nor limiting the standing of plaintiffs such as these trusts as representatives of Union employees. (Trustees of Natl. Benefit Fund for Hosp. & Health Care Empls. v Constant Care Community Health Ctr., 669 F2d 213 [4th Cir 1982]; State Finance Law § 137 [5] [b].) There is, however, a critical distinction between “statutory surety bonds” which are issued pursuant to a statute involving public improvement projects and “common-law bonds”, as here, standing in place for a private improvement project. Clearly the Bond at bar does not secure “wages” nor does it define “labor”.
Chamberlain and Washington, as principal and surety, are free to contract and free to limit their contract to intended beneficiaries. (See, Fourth Ocean Putnam Corp. v Interstate Wrecking Co., 66 NY2d 38 [1985].) Similarly, they are free to limit their liability to a specific service, e.g., labor, and to exclude by such itemization or silence “wages and compensation” as were found to be secured in Martin v Casey & Sons (5 AD2d 185 [1958]) on which the plaintiffs rely. As a consequence of their freedom from legislative direction the defendants eliminated from the beneficiaries of their contract all those not in direct privity with Chamberlain or a Chamberlain subcontractor.
Only one of these plaintiffs, Iron Workers Local Union No. 9, had a direct contract with the subcontractor, Industrial. The other three plaintiffs are more remote, being third-party beneficiaries of the Union No. 9 contract with Industrial. Accordingly those three plaintiffs do not fit the definition of a claimant under this common-law Bond. These Funds’ lack of privity is evidence neither Chamberlain nor Washington contemplated such a distant claimant under the Bond. In addition, they neither provided labor nor material “in the performance of the contract”. Without statutory elaboration, the court is confined to the “straightforward language of the bond”. (Bethlehem Steel Corp. v United States Fid. & Guar. Co., 193 AD2d 1058, 1059 [4th Dept 1993].) Since the term “labor” is not specifically defined in the Bond, this court is constrained to give the word its plain, ordinary and proper meaning. (Union Labor Life Ins. Co. v Fidelity & Deposit Co., 228 AD2d 244 [1st Dept 1996].)
Union No. 9, the fourth plaintiff, has the same problem. Did they supply labor? Unless the word “labor” in the common-law Bond includes the delinquent fringe benefits sued for, its action must fail because the plaintiff would then not qualify as *1016 a claimant under the plain words of the Bond. This court has found only one case on the issue whether or not a union in such a situation as this, in fact, does supply labor. The answer in that case was no. “The surety is entitled to partial summary judgment against the union for all of the claims arising out of work performed”. (United States for Use & Benefit of Intl. Bhd. of Elec. Workers, Local Union 692 v Hartford Fire Ins. Co., 809 F Supp 523, 525 [ED Mich 1992].)*
Essentially this plaintiff argues for a judicial innovation and expansion of the Bond’s words “sums justly due” which the Supreme Court of the United States approved in United States v Carter (supra). However, as previously mentioned, that action was commenced under the Miller Act and used the quoted phrase, “just sums due”, to hold fringe benefits included in the bond. Additionally, in Carter there was a defaulting bonded general contractor who was also a signator to the collective bargaining agreements. (United States v Carter, supra, at 213.) Neither fact is present here and such distinctions render the inventive doctrine of Carter unpersuasive in this case.
By parallel reasoning, this plaintiff alludes to our cases under State Finance Law § 137 which specifically includes these benefits in public works projects. Such a determination here would necessarily fix the bond liability as greater than the principal’s because in this case Industrial has been paid. (Lamparter Acoustical Prods. v Maryland Cas. Co., 64 AD2d 693; MacKennan v American Cas. Co., 169 AD2d 709 [1991].) In fact, this Bond declares itself void, “if principal shall promptly make payment to all claimants as hereinafter defined, for all labor”.
Martin v Casey & Sons (5 AD2d 185 [1958], supra, affd without opn 8 NY2d 728 [I960]), which adopted the reasoning of United States v Carter (353 US 210, supra), is not to the contrary. In that case, as in Carter, the general contractor defaulted, not the subcontractor as we have here, and the Court held that it was “quite immaterial that the bond in the Carter case was a statutory bond while the bond in this case is a common-law bond”, because the Court went on to say “the language to be construed is identical with * * * one exception * * * the language in the instant bond * * * is much broader”. (Martin v Casey & Sons, 5 AD2d, at 190.) At bar, the Bond’s language is precise. A “claimant” is restricted to one in direct *1017 privity with the subcontractor. The security extends to “labor and material” only, “in performance of the contract”. There is no statutory incentive available in this case to expand the terms as there is under the Miller Act, our State Finance Law or even Business Corporation Law § 630. Without statutory authority, the common-law Bond must be taken at face value. Thus, since the Union provided no labor in performance of the contract its claim against the surety must fail.
Accordingly this court holds there is no language in the Bond before the court which contemplates these plaintiffs or their beneficiaries as intended claimants or laborers entitled to benefits under the Bond. The motion of the defendants to dismiss the complaint, previously converted to a motion for summary judgment, is granted in all respects. The cross motion of the plaintiffs for summary judgment is denied.
ORDER
Based upon all the papers submitted in support and in opposition to the parties’ motions, and upon the above decision, it is hereby ordered that defendants’ motion to dismiss the complaint, previously converted to a motion for summary judgment, is granted; it is further ordered that the cross motion of the plaintiffs for summary judgment is denied.

 This case went on to hold that under ERISA (29 USC § 1144) and the Miller Act, supplemental benefits were secured by the surety.