*This opinion is subject to revision before final publication in the Pacific Reporter*

**2020 UT 11**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

MICHAEL MCDONALD, *et al.*,[1]
*Appellees,*

*v.*

FIDELITY & DEPOSIT COMPANY OF MARYLAND,
*Appellant.*

No. 20170609
Heard November 12, 2019
Filed February 28, 2020

On Direct Appeal

Fifth District, Iron County
The Honorable Gary D. Stott
No. 110500817

Attorneys:

Kenneth B. Grimes, Salt Lake City, for appellees

Troy L. Booher, Beth E. Kennedy, Robert F. Babcock,
Jeffrey R. Handy, Salt Lake City, for appellant

---

[1] The other appellees are George Bosiljevac, Mike Baker, Dick Devries, Eric Sutton, Jerry Romero, Willis Norton, Tom Moen, Jr., Mark Calkins, Dennis Walton, Rick Meyer, Ed Norton, Doug Thomas, Lon West, Sharon Hope, Vinson Hughes, and Eric Sutton, as Trustees of the Intermountain Ironworkers Pension Plan, the Intermountain Ironworkers Tax Deferral Plan, the Intermountain Ironworkers Health & Welfare Plan, the Intermountain Ironworks Joint Apprenticeship & Training Fund, the Ironworkers Management Progressive Action Cooperative Trust, the Ironworkers Vacation Fund of Utah, the Ironworkers Political Action League Trust, the Ironworkers Industry Advancement Fund, the Ironworkers HRA Fund, and Ironworkers Local Union No. 27.

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court in which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, JUSTICE PEARCE, and JUSTICE PETERSEN joined.

———————

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1    This case arises out of a state construction project at Southern Utah University (SUU). One of the subcontractors hired to work on the project, Idaho Iron, Inc., failed to make contributions to various trust funds for its employees' work on the project, as required by a collective bargaining agreement and various trust agreements (collectively, the union contract). The trusts sought to recover the delinquent contributions from the public payment bond[2] associated with the SUU project by suing Fidelity & Deposit Company of Maryland, the surety for the payment bond.[3] They also sought prejudgment interest, liquidated damages, audit and attorney fees, and court costs as contemplated by the union contract and statute.

¶2    The governing public payment bond statute provides a "right of action on a payment bond" for "any unpaid amount due" the claimant if certain conditions are satisfied. UTAH CODE § 63G-6-505(4) (2010) (public payment bond statute).[4] Citing this statute, the trusts have asserted that the amounts they sought to recover qualified as amounts "due" the Idaho Iron employees who had worked on the SUU project. And they have claimed that they

———————

[2] A payment bond secures "protection of each person supplying labor, service, equipment, or material for the performance of the work provided for in the contract" for which the bond is furnished, UTAH CODE § 63G-6-505(1)(b) (2010) — in this case the SUU construction contract between the state and its general contractor.

[3] The trust funds also sued Idaho Iron for these delinquent contributions in federal court in Idaho and obtained a judgment against Idaho Iron. Idaho Iron, however, filed for bankruptcy and the delinquent contributions remain unpaid.

[4] We cite the 2010 version of the Procurement Code, Utah Code chapter 63G-6 (2010), because the payment bond and associated construction contract were signed in 2010. The Procurement Code has since been amended. *Compare* Utah Code chapter 63G-6 (2010), *with* Utah Code chapter 63G-6a (2013).

can recover those amounts on behalf of the relevant Idaho Iron employees because a trust fund stands in the shoes of its beneficiaries under precedent from the court of appeals. *See Forsberg v. Bovis Lend Lease, Inc.*, 2008 UT App 146, 184 P.3d 610**.** The district court agreed, granting the trusts' motion for summary judgment and denying Fidelity's cross-motion.

¶3 Fidelity challenges both decisions on this appeal. It asks us to reverse both the grant of summary judgment in favor of the trusts and the denial of Fidelity's cross-motion. In Fidelity's view, the amounts owed to the trusts, "including liquidated damages, interest, costs, and attorney fees," are not amounts due the employee under the public payment bond statute. Fidelity asks us to interpret the statute to limit the right of action on a payment bond to amounts due *to* an employee. The trusts stake out a different view. They ask us to interpret the statute to encompass claims for any amounts due *for* an employee or on the employee's behalf.

¶4 We adopt a middle position. We conclude that the right of action under the payment bond statute extends to any amount due an employee, meaning any amount that is traceable specifically to an employee. On that basis we reverse the decision granting summary judgment in favor of the trusts. But we stop short of reversing the denial of Fidelity's cross-motions because we identify some disputes requiring further proceedings on remand.

I

¶5 Sometime prior to March 2010 the State hired Big-D Construction to complete a construction project at SUU. Big-D procured a payment bond for the full cost of the construction contract as required by Utah Code section 63G-6-505(1)(b) (2010). It purchased the bond from Fidelity. Big-D then hired Idaho Iron as a subcontractor to do ironwork for the SUU project. And Idaho Iron, in turn, hired eight employees—some union and some non-union—to work on the project.

¶6 Pursuant to its union contract, Idaho Iron was obligated to make contributions to several different trusts based on the number of hours worked by its employees on this and other projects, regardless of the employees' union status. The relevant trusts include a tax deferral fund and a vacation fund, under which contributions seem to lead directly to a monetary payout to the specific employee for whom the contributions were made; a welfare fund, under which employees gain coverage by working a certain number of hours, if contributions are paid; a pension plan, under which employees receive benefits service credits for covered work

regardless of whether contributions were made; and a variety of other funds such as an apprenticeship fund, working dues fund, and industry fund, under which the contributions provide a variety of benefits to the ironworkers' industry, union, signatory employers, and workers in general (as opposed to direct benefits to individual ironworkers).

¶7    Idaho Iron, however, failed to make *any* trust contributions for the hours that its employees worked on the SUU project. And the trusts filed two lawsuits attempting to recover the delinquent contributions. They first sued in federal court in Idaho, seeking to recover from Idaho Iron itself. The trusts obtained a judgment against Idaho Iron, but Idaho Iron filed for bankruptcy and the delinquent contributions remain unpaid. The trusts also brought this suit, seeking to recover the delinquent contributions from Fidelity, the surety for the payment bond associated with the construction contract for the SUU project.

¶8    In this suit, the trusts sought below to recover the delinquent contributions—as well as prejudgment interest, liquidated damages, audit and attorney fees, and court costs—from the Fidelity payment bond.[5] They relied on the public payment bond statute, which provides that "[a] person shall have a right of action on a payment bond under this section for any unpaid amount due him if: (a) the person has furnished labor, service, equipment, or material for the work provided for in the contract for which the payment bond is furnished under this section; and (b) the person has not been paid in full." UTAH CODE § 63G-6-505(4) (2010).

¶9    While the trust funds did not "furnish[] labor, service, equipment, or material," they argued that they "stand in the shoes of the employees" and thus have standing to recover against the payment bond. In support of this view, the trust funds cited *Forsberg v. Bovis Lend Lease, Inc.*—a case arising under the private payment bond statute. 2008 UT App 146, 184 P.3d 610. Under that statute, an owner who fails to obtain a payment bond is liable to "each person who performed labor or service . . . under the commercial contract

---

[5] In addition to recovery of delinquent contributions by the trust funds, the union contract contemplated recovery of "assessments, liquidated damages, interest, expenses of collection court costs, and/or attorney's fees arising from or relating to any such delinquencies."

for the reasonable value of the labor or service performed" by the employees. UTAH CODE § 14-2-2 (2005). The *Forsberg* court interpreted this provision to allow employee trust funds to sue to recover unpaid employer contributions to the trust funds. 2008 UT App 146, ¶ 12. It concluded that unpaid contributions were part of the employee compensation package and thus constituted part of the "reasonable value of the labor" under that statute. *Id.* ¶ 50. And it thus held that the trustees were entitled to seek recovery for those amounts on behalf of the employees because "[t]he trustees stand in the shoes of the employees and are entitled to enforce their rights." *Id.* ¶ 13 (quoting *United States v. Carter*, 353 U.S. 210, 220 (1957)).

¶10 Fidelity challenged this view. It asserted that the trusts could not recover against the payment bond because the amounts sought by the trust funds were not "due" the Idaho Iron employees under the terms of the statute. And it accordingly claimed that the trusts' right to stand in the shoes of the employees was beside the point.

¶11 Both parties filed motions for summary judgment in the district court. In its motion, Fidelity claimed that the trusts could not recover anything because the eight project employees had agreed to work without any fringe benefits and had thus been paid in full— such that there was nothing due *to* the employees. Alternatively, Fidelity asserted that the trusts should not be able to recover on behalf of the employees because the employees would receive little or no benefit from the contributions.

¶12 In their motion, the trusts contended that the employment agreements waiving fringe benefits were invalid under federal labor law. They also disputed the lack of benefits flowing directly to individual employees. And they argued that the amount of benefits flowing to individual employees was nonetheless irrelevant under *Forsberg* because the contributions were being made *for* the employees. Consequently, the trusts claimed that they should be able to recover all delinquent contributions stemming from the SUU project.

¶13 The district court granted the trusts' motion and denied Fidelity's. It thus allowed the trusts to recover the full $79,167.06 of unpaid Idaho Iron contributions related to the SUU project as well as prejudgment interest, liquidated damages, audit and attorney fees, and court costs, for a total judgment of $314,339.72. Fidelity appealed, contending that neither part of the judgment was recoverable under the public payment bond statute as amounts "due" the employees.

II

¶14  The disposition of this appeal turns largely on the meaning of the terms of the public payment bond statute. A range of other issues are raised in the briefing. The parties devote considerable attention, for example, to the question whether the Idaho Iron employees are barred by federal law from waiving their fringe benefit rights under the union contract—whether either ERISA[6] or the NLRA[7] preclude union and non-union employees from waiving employee benefits negotiated on their behalf by a collective bargaining agent. These are important questions. But we need not resolve them to decide this appeal.[8] We may resolve most of the questions on appeal by deciding whether the contributions and other amounts owed to the trusts under the union contract constitute amounts "due" the employee under the statute. And we can answer that question without wading into complex issues of federal law.

¶15 We do so in the paragraphs below. First, we present our interpretation of the statute. We hold that the public payment bond statute is not limited to recovery of either amounts "due to" an employee or amounts "due for" an employee—as Fidelity and the trusts, respectively, have argued. Instead, the statute contemplates recovery of traceable benefits that are due an individual employee— "due him" means a traceable amount that an employee will actually and individually benefit from. Second, we apply our interpretation to the parties' competing motions for summary judgment. We reverse the decision granting the trusts' motion for summary judgment but reverse and remand for further proceedings on Fidelity's motion.

A

¶16 The public payment bond statute provides that "[a] person shall have a right of action on a payment bond . . . *for any unpaid*

---

[6] Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461.

[7] National Labor Relations Act (NLRA), 29 U.S.C. §§ 151–169.

[8] Regardless of the terms of the individual employment contracts, the parties agree that the terms of the union contract remained intact. And under the unaltered union contract, each Idaho Iron employee is eligible for certain fringe benefits according to the terms of the individual trust agreements.

*amount due him* if: (a) the person has furnished labor, service, equipment, or material for the work provided for in the contract for which the payment bond is furnished under this section; and (b) the person has not been paid in full." UTAH CODE § 63G-6-505(4) (2010) (emphasis added). Here the bond was furnished by Big-D for its SUU construction project in the amount of the full contract price between the State and Big-D, as required by law. *See id.* § 63G-6-505(1)(b) (2010). Thus, the class of persons entitled to recover under that bond is limited to those who "furnished labor, service, equipment, or material for . . . work" on the SUU project and had "not been paid in full." *Id.* § 63G-6-505(4) (2010).

¶17  The trusts themselves do not fall within the class of persons allowed to recover under the public payment bond statute—they did not furnish "labor, service equipment, or material" for the SUU project. But the eight employees hired by Idaho Iron did furnish labor for the project. And the trustee of a benefit fund for such employees may have standing to sue on their behalf where "[t]he trustees stand in the shoes of the employees and are entitled to enforce their rights." *Forsberg v. Bovis Lend Lease, Inc.*, 2008 UT App 146, ¶ 13, 184 P.3d 610 (quoting *United States v. Carter*, 353 U.S. 210, 220 (1957)). On this point we agree with the opinion of our court of appeals in the *Forsberg* case.

¶18  Fidelity does not contest the trusts' general right to stand in the shoes of the employees. It just contends that the claims at issue do not fit the requirements of the public payment bond statute—that the claim is not for amounts "due" the eight Idaho Iron employees, but for amounts due the trust funds under the union contract. Fidelity asserts that the Idaho Iron employees waived the right to collect any fringe benefits under the terms of their individual employment contracts. And although Fidelity acknowledges that the union contract required Idaho Iron to make trust contributions that may benefit the SUU project employees, Fidelity contends that those contributions are not directly "due" the employees as that term is used in the statute.

¶19  Fidelity thus concedes that the trusts have a right to recover unpaid contributions from Idaho Iron. But it insists that the trusts have no right of action on the payment bond because the amounts sought are not due directly to the employees who worked on the SUU project. In Fidelity's view, then, the statute limits recovery to amounts due *to* the employees—direct obligations to individual employees.

¶20 The trust funds advance a much broader view of the statute. They claim that the unpaid contributions *are* amounts "due" the employees because the contributions were due on behalf of or *for* the employees in question. As to other amounts included in the judgment, the trusts assert that these amounts are recoverable because they will benefit the employees as opposed to the trusts, which exist only to benefit their employee beneficiaries.

¶21 Each side thus advances an "all or nothing" position under the statute. Fidelity says that the trusts can recover nothing because the statute is limited to "amounts due [to]" an individual employee. The trusts, on the other hand, say they are entitled to everything encompassed in the judgment entered below because the statute encompasses all "amounts due [for]" an employee. And both sides claim a right to judgment as a matter of law on the basis of their positions.

¶22 We embrace a middle ground. We find neither side's interpretation of the statute to be correct. And we reject an all or nothing result because we find it incompatible with the statute.

¶23 The key statutory question concerns the scope of the statutory "right of action on a payment bond . . . for any unpaid amount *due him*"—due a person who has furnished "labor, service, equipment, or material" on a project covered by a payment bond. Utah Code § 63G-6-505(4) (2010) (emphasis added). The operative phrase—"due him"—is not restricted or qualified. It says neither "due *to* him" nor "due *for* him."[9] And it would flout our interpretive canons to add qualifying or limiting language that is not stated on the face of the statute. *See Nevares v. M.L.S.*, 2015 UT 34, ¶ 34, 345 P.3d 719 (rejecting an interpretation of a statute on the ground that it ran afoul of the canon against "read[ing] into the statute a limitation not expressly stated on its face"); *Olsen v. Eagle Mtn. City*, 2011 UT 10, ¶ 18, 248 P.3d 465 (declining to "add conditions . . . that are not set forth expressly by legislation").

¶24 We thus read the statute to encompass any and all traceable amounts that are ultimately "due" an individual employee. This would clearly encompass wages or other payments made directly to

---

[9] A recent amendment to the statute added a "to." *Compare* Utah Code § 63G-6-505(4) (2010), *with id.* § 63G-6a-1103(4) (2013). We express no opinion on the proper interpretation of the amended provision, as the matter is not presented to us.

an employee. But it would also extend to employment benefits that are "due" an employee in a less immediate or direct sense.[10] A contribution to a 401(k) or similar retirement account comes to mind. Such a contribution is not made directly "to" an employee in the sense of an amount received immediately in a paycheck. But it is impossible to think of such contributions as amounts that aren't "due" the employee—the whole point of the contribution is to add to an account that an employee will be able to access later, at the time of retirement.

¶25  The contribution in question, however, must be specifically traceable to an individual employee. A general contribution that vaguely benefits all employees would not be thought to be "due" an individual—even if it could be viewed as *for* an employee or *on her behalf*. Sticking with the retirement theme, a government employer may provide general financial support that keeps a pension fund solvent. But the employer's general support of the fund's solvency would not be thought of as an amount "due" an employee (at least where the support bears no traceable relationship to the amount of the employee's pension).

¶26  This is the principle we find in the text of the statute. The statutory right of action is a right to sue for amounts "due" a person—meaning any amounts specifically traceable to that person.

B

¶27 This sets the stage for our assessment of the parties' cross-motions for summary judgment. In light of the above, we can hold conclusively that the district court erred in granting summary judgment to the trust funds. Because the statutory right of action does not extend to all amounts due *for* or *on behalf of* a person, the summary judgment in the trusts' favor cannot stand. That judgment

---

[10] Fidelity effectively concedes this point in its briefing. It states that "[m]ost of the contributions" to the trusts in this case "will never benefit the five non-union employees," and that "even the three union members will never receive many of the amounts." But if only "most" or "many" of the contributions will not benefit the eight employees in question, then it follows that some contributions will. And if the benefit, whether direct or indirect, that an employee will receive for her work under a public payment bond is tied to the delinquent contribution in a traceable manner, then that delinquent contribution should qualify as an amount due the employee.

was premised on the idea that the trusts have a right to sue on amounts not due the employees but merely due on their behalf. That is incorrect. And we reverse the decision granting the trusts' motion for summary judgment on that basis.

¶28 It is much more difficult, however, to render a conclusive opinion on the viability of Fidelity's cross-motion for summary judgment. The difficulty is a result of the positions of the parties in the briefing on this appeal. Because each side took an all or nothing approach, neither analyzed the subtlety that we have identified—as to whether unpaid contributions reflect amounts traceable to individual employees. And the parties' framing requires a remand.

¶29 For some of the contributions in question, it seems that there is no amount traceable to individual employees. This would seem to apply, for example, to the pension plan in question. In the district court, the funds conceded that each of the eight workers in question had already received service credits toward their pensions for their work on the project. That suggests that Idaho Iron's failure to make contributions toward the pension fund had no traceable effect on individual workers—a conclusion that seems to jibe with the funds' description of the pension fund as a defined benefit plan. If these premises are confirmed on remand, it would appear that the funds would have no right of action on the payment bond for unpaid contributions to the pension plan, since the nonpayment of those contributions could not be traced to an amount "due" an individual employee.

¶30 This may also hold for other contributions described in the record. The record includes references to funds that "provide for a variety of benefits to ironworks' industry, union, signatory employers, and workers in general," but that "do not provide benefits directly to individual ironworkers." This suggests a lack of traceability, and thus a lack of a right of action on the payment bond. The same could conceivably hold for the claims for prejudgment interest, liquidated damages, audit fees, and court costs. If these amounts benefit employees only by increasing the trusts' financial well-being generally, and not by providing any benefit that is traceable to individual employees, then these amounts would also be unavailable in an action on the payment bond.

¶31 Other contributions in question may be more likely traceable. Some of the material in the record regarding the tax deferral fund and the vacation fund, for example, could arguably be read to suggest that unpaid employer contributions to these funds could qualify as amounts "due" employees. This could hold, for

example, if contributions to these funds could be shown to lead directly to payouts or benefits due employees under the governing terms of the trust agreements.

¶32 We discuss these funds and contributions only by way of illustration, and to offer some guidance for remand. None of the above should be taken as a conclusive determination on whether the funds have a right of action for any of these contributions under the standard we have established. On this record and this briefing, we cannot discern whether or to what extent there may be amounts that the trusts are seeking that are "due" employees in the sense of being specifically traceable to them. So we leave this matter for the parties and the district court on remand.

III

¶33 It is our province and duty to say what the law is. In fulfilling that duty we are not limited to a choice between the parties' competing positions. We must get the law right, even if in so doing we establish a standard that differs from either of the approaches presented in the briefing on appeal.

¶34 That is the path we follow here. We hold that the right of action under the public payment bond statute is not limited to recovery of either amounts "due to" or "due for" a person providing service or materials under the bond. It contemplates recovery of any specific benefit that is due a person in the sense of being traceable to that person. That holding sustains a decision to reverse the entry of summary judgment in favor of the trusts but to remand for further proceedings on the summary judgment motion filed by Fidelity.

¶35 Our holding also leaves for remand the question of any award for attorney fees. The Procurement Code provides for an award of "reasonable attorney fees to the prevailing party" "[i]n any suit upon a payment bond." UTAH CODE § 63G-6-505(6) (2010). We are not yet in a position to discern whether Fidelity or the trusts may be entitled to fees as the "prevailing party" in this action.