The UNITED STATES of America, for the Use and Benefit of Barney AUSTIN, an individual, and Great American Insurance Company, Appellants,

v.

WESTERN ELECTRIC CO., Inc., and Merchants Fire Assurance Corporation of New York, Appellees.

No. 19024.

United States Court of Appeals Ninth Circuit.

Oct. 5, 1964.

Wm. J. Conners, Anderson, McPharlin & Conners, Los Angeles, Cal., for appellants.

Marvin A. Freeman, Ivon B. Blum, Beverly Hills, Cal., for appellees.

Before CHAMBERS and KOELSCH, Circuit Judges, and JAMESON, District Judge.

JAMESON, District Judge:

In this Miller Act [1] case, use plaintiff, Barney Austin, a subcontractor, and his surety, Great American Insurance Company, have appealed from a summary judgment in favor of the defendants Western Electric Co., Inc., a prime contractor, and its surety, Merchants Fire Assurance Corporation of New York.

1. 40 U.S.C. § 270a et seq.

Western Electric entered into a contract with the United States to construct Project Mercury, including tracking station 13 at Point Arguello, California. It entered into a subcontract with Burns & Roe, Inc., for engineering and construction work. In turn Burns & Roe issued to plaintiff Austin, and Austin accepted, a so-called purchase order whereby Austin agreed to do the architectural, structural and mechanical phases of the work to be done at station 13 by Burns & Roe under its subcontract.

Austin completed the work under his subcontract with Burns & Roe, but was unable to pay for all the labor and material furnished by others in the performance of this contract. Austin's surety, Great American, paid labor and material claims totalling $22,279.96. Plaintiffs' complaint claims a balance due from defendants in the sum of $111,465.11.[2]

Plaintiffs' complaint was filed on December 7, 1961, although plaintiffs contend that it was delivered to the clerk

of the district court on December 6 and should have been filed as of that date.[3]

On December 8, 1962, defendants filed their motion for summary judgment on the grounds (1) that the suit was not instituted within one year from the date on which the last of the labor was performed or material supplied[4]; and (2) that the plaintiff Austin's notice of claim was insufficient for the reason that it did not state "with substantial accuracy the amount claimed" by plaintiff.[5]

On January 10, 1963, plaintiffs filed a notice of motion for an order correcting the filing date on the complaint to December 6, 1961, the date on which the complaint was delivered to the clerk.

The two motions were heard by the district court on February 4, 1963. The case had also been calendared for a pretrial conference on the same date. Counsel for plaintiff indicated that he was not ready for pretrial and that further discovery was necessary.[6] The pre-

---

2. The complaint asserts two causes of action: the first, based on the Miller Act, against Western Electric and its surety; the second, for breach of contract, against Burns & Roe, Inc. The second cause of action is still pending in the district court.

3. It is contended that plaintiffs' complaint was delivered to the clerk of court on December 6, 1961; that the clerk informed the person who submitted the complaint for filing that it could not be filed because it contained a fictitious defendant in contravention of a local rule; that the clerk retained the pleading, stating that if a dismissal of the fictitious defendant were filed, the "situation would be remedied"; that a dismissal was filed on December 7 and the complaint marked filed as of that date.

4. Section 270b(b) provides: "Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed * * * but no such suit shall be commenced after the expiration of one year after the day on which the last of the labor was per-

formed or material was supplied by him. * * * *"

5. Section 270b(a) provides in pertinent part that " * * * any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, *stating with substantial accuracy the amount claimed* and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed." (Emphasis added).

6. The transcript of the proceedings of the hearing of February 4, 1963, contains the following:
"Mr. Conners (counsel for plaintiffs-appellants): * * *
"Mr. Blum (counsel for defendants-appellees) and I feel—and I am sure he will agree—that there is so much to be accomplished by pretrying this case, by stipulating to the admission of documents, that it's something that we

trial conference was continued to March 11, 1963. No conference was held.

An order was entered February 11, 1963, granting defendants' motion for summary judgment, and findings of fact, conclusions of law and judgment were entered February 21, 1963. An order was entered March 11, 1963, denying plaintiffs' motion to correct the filing date of the complaint.

Appellants appealed from the judgment and the order denying their motion to correct the filing date. On September 10, 1963, an order was entered in this court dismissing the appeal for the reason that neither the summary judgment nor the order was appealable, but suggesting that if the district court should see fit to make the determination and give the direction specified in Rule 54 (b) [7] of the Federal Rules of Civil Procedure and enter judgment in conformity therewith, an appeal therefrom could be heard upon the briefs and record of the proceedings in the district court.

On October 16, 1963, the district court entered an order amending its order of February 11, 1963, to provide that the judgment entered in favor of the defendants should be a final judgment pursuant to Rule 54(b). On October 21, 1963, amended findings of fact, conclusions of law, and judgment were entered in conformity with the amended order and the provisions of Rule 54(b).

The summary judgment was granted on the first ground of defendants' motion, i. e., that plaintiffs' action was filed more than one year from the date on which the last labor was performed and material supplied by the plaintiff Austin. The district court did not pass upon the question of the sufficiency of the notice of the claim filed by Austin.[8]

The court found that plaintiff Austin "substantially completed the work and the furnishing of material * * * on or about October 25, 1960"; that the labor and material furnished subsequent to that date "were of a minor nature, such as cleanup, repair, correction or installing overlooked items as noted by Burns & Roe, Inc., in its punch list"; and that "written notice of nonpayment was given by plaintiff Austin to Western Electric on December 14, 1960, stating that the work of the subcontract * * * was completed on or about October 25, 1960".

Appellants contend, inter alia, that the "district court erred in weighing the evidence and resolving issues rather than determining that there were issues to be resolved in a regular trial". The record suggests that this may be true. There is no recital in the court order, findings of fact, or judgment that the pleadings, depositions, admissions, and affidavits "show that there is no genuine issue as to any material fact." [9]  Rule 56(c).

---

should work on very hard. I think it will be rewarded by a shorter trial.

"THE COURT: Well, suppose we continue the pretrial and the setting about five weeks? That will give you four weeks to complete your discovery and another week to get ready to prepare the pretrial, with the understanding that I won't be too insistent that you be here at that time if you both feel that another week is necessary. * * * *".

7. Rule 54(b), F.R.C.P. provides that, "When more than one claim for relief is presented in an action * * * the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just rea-

son for delay and upon an express direction for the entry of judgment."

8. The notice of claim recited that a "balance of more than $70,000 is now due and demand has heretofore been made for the payment of the same". The complaint claimed $111,465.11. Plaintiffs' claim as disclosed by discovery proceedings was $121,870.26.

9. The nearest approach to such a finding is the statement in the order granting the motion for summary judgment that, "It appears without conflict from the evidence and interrogatories on file that on October 25, 1960, the use plaintiff had *substantially* 'completed the furnishing of labor, materials and services' * * * *".

The findings of fact recite that "having considered all of the evidence and having examined all of the proofs offered by the respective parties", the court makes its findings of fact—a form customarily followed where the court has weighed the evidence and resolved the issues. Rule 52(a), by amendment effective March 19, 1948, specifically provides that, "Findings of fact and conclusions of law are unnecessary on decisions of motions" for summary judgment under Rule 56. We recognize, however, that findings of fact and conclusions of law are frequently used in granting motions for summary judgment.[10] As suggested in Trowler v. Phillips, 9 Cir. 1958, 260 F.2d 924, 926, findings of fact, "while unnecessary", sometimes "provide a handy summary". On the other hand, "all too often a set of unnecessary findings of fact is the telltale flag that points the way to a discovery that summary judgment should not have been granted".

■ If the district court were permitted to weigh the evidence and resolve issues in making its findings of fact and conclusions of law, we could properly find from the evidence here that the findings and conclusions should be sustained. It is necessary to determine, however, whether viewing the evidence as a whole and the inferences to be drawn therefrom in the light most favorable to the plaintiff it may be said that there is no genuine issue of fact,[11] mindful also of the fact that there is no express finding to that effect by the district court.

A determination as to whether there is a genuine issue of fact involves three related questions: (1) is "substantial completion" the proper test as to when the last of the labor is performed or materials supplied; (2) were any of the so-called "punch list" items performed and furnished on or after December 7, 1960, and if so, were they required to complete the subcontract of the plaintiff Austin; and (3) are plaintiffs bound by the notice given by the plaintiff Austin on December 14, 1960?

■ The Miller Act "is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects. * * * But such a salutary policy does not justify ignoring plain words of limitation and imposing wholesale liability on payment bonds". Clifford F. MacEvoy Co. v. U. S., 1944, 322 U.S. 102, 107, 64 S.Ct. 890, 88 L.Ed. 1163; United States v. Carter, 1956, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776; Apache Powder Co. v. Ashton Co., 9 Cir. 1959, 264 F.2d 417, 421.

As noted supra, a subcontractor is required to give notice of his claim within 90 days from the date on which he performed the last labor or furnished or supplied the last material for which claim is made. He must file suit within one year from the same date. Appellees contend that the critical date is when the contract was "substantially performed". Apparently, the district court adopted this test and found that the work was "substantially completed" on October 25, 1960.

■ We do not find the phrases "substantially performed" or "substantially completed" used in any of the decided cases. A more accurate statement of the test to be applied is whether the work was performed and the material supplied as a "part of the original contract" or for the "purpose of correcting defects, or making repairs following in-

10. The local rules for the United States District Court for the Southern District of California provide for serving and filing proposed findings of fact and conclusions of law and proposed judgment with motions for summary judgment.

11. An issue of fact may arise from inferences to be drawn from the evidence, and all doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment. Cameron v. Vancouver Plywood Corporation, 9 Cir. 1959, 266 F.2d 535, 539.

spection of the project". See United States v. Gunnar I. Johnson & Son, Inc., 8 Cir. 1962, 310 F.2d 899, where the court held that two bus duct elbows were component parts of an electrical equipment distribution system, although there was no evidence "as to the cost or value of such elbows, or as to whether they were of major or minor importance".[12]

The case which proved persuasive with the district court, United States for Use of McGregor Architectural Iron Co. v. Merritt-Chapman & Scott Corporation, N.D.Pa.1960, 185 F.Supp. 381, is distinguishable. There the court found, after trial, that the subcontractor supplied the last materials on his contract by January, 1954; that the "correction of errors in the work performed * * * completed in early 1954 and which consisted in supplying some missing bolts and closing some holes in the head posts, which had been overlooked, was pursuant to an inspection made in 1955 followed by notice thereof and not part of the original performance of the contract". The court's "discussion" called attention to the fact that the work had been completed by January, 1954, and that it was "most significant that a year and a half later two hours of labor were performed on June 9, 1955, and eight hours of labor on June 20, 1955, without charge, followed by a carefully worded formal notice on June 22, 1955".

Attached to "Declaration of Barney Austin in Opposition to Motion for Summary Judgment" as an exhibit is a "punch list", dated October 13, 1960, containing some 60 items, and sent to Austin by Burns & Roe on October 20. The letter of transmittal called it a "punch list of work covered by your contract" and stated that the work must be completed by October 26, 1960.[13] In other words, it was not a list submitted after completion of the work and limited to corrections and repairs.

Appellees concede that there is a dispute as to the last date "upon which the punch list items were completed",[14] but contend that the dispute is immaterial because the punch list items were in the nature of corrections of minor defects, not necessary to "substantial completion" of the plaintiff's contract. Many of the items in the punch list, however, appear to be work required for the "completion of the project".[15] Others obviously were in the nature of corrections, repairs and cleanup.

Appellees rely heavily upon the notice prepared, signed and verified by Austin's attorney and mailed to the prime contractor on or about December 14, 1960. This notice reads in pertinent part: "You and each of you will please take notice that on or about the 25th day of October, 1960, Barney Austin * * * completed the furnishing of labor, material

12. The fact that the work performed or material furnished was minor in nature is not conclusive, where the work is performed or material furnished in connection with the completion of the project and not for the purpose of correcting defects. See, for example, U. S. ex rel. Bourquin v. Chester Const. Co., 2 Cir., 1939, 104 F.2d 648; United States v. James Stewart Co., D.Idaho 1961, 195 F.Supp. 715; Noland Co. v. Allied Contractors, Inc., 4 Cir. 1959, 273 F.2d 917.

13. Austin, in answer to interrogatory 126 (b) testified that punch list items mean "completing or correcting minor items of work as required by the project inspector or by Burns & Roe, Inc."

14. The dispute arises as to whether any work was done on or after December 7,

1960. Austin testified in a deposition that C. W. Barber worked on December 5, 6, 7, 8, and 9. An affidavit of Barber recites that he worked on December 5, 6, 7, and 8; that he refused "to swear that he worked on December 9, 1960, but is reasonably certain that he did so, and avers that he was paid $121.92 by Barney Austin on December 9, 1960 for his work beginning on December 5, 1960".

15. We do not presume to determine which items might be required for the completion of the project, but it is noted that the list includes numerous items of painting, "flashing for collars on conduit and engine exhaust piping through building walls", "paving access road", "finish plumbing", "plumbing vents", and installing window screens, hardware, door closers, and other items.

and services upon a certain project, known as Project Mercury * * * ".

With reference to this notice, plaintiff Austin answered interrogatories submitted by defendants in pertinent part as follows:

Interrogatory 54: "Mr. Butts (Austin's attorney) was authorized and directed to prepare and serve such notice."

Interrogatory 56: "Each and all of the allegations or factual statements contained in the document are affirmed as being substantially true as of the date of that document and in accordance with the knowledge of answering plaintiff and Mr. Butts at that time." [16]

Interrogatory 136: "As of December 14; 1960, the statement referred to * * * was probably true and correct according to the knowledge of Mr. Robert Butts at that time, but it was not correct in accordance with the knowledge of Barney Austin at that time."

In answer to other interrogatories, Austin stated that the "last work as far as physically completing the work of the subcontract on the job site, was December 9, 1960, * * * " (Interrogatory 71); that he furnished labor or materials in prosecution of the work subsequent to "on or about October 25, 1960 (In-

terrogatory 138); and that he would rely upon "payroll records, material bills, testimony of myself and of my employees" to prove the truth of his answer to interrogatory 138.

In a deposition Austin testified that the statement that the job was completed on or about October 25, 1960, was correct, "with the exception of the work that was requested on the punch list". In Austin's "declaration" it is recited that, "On or about November 2, 1960, the work of the subcontract had been substantially completed so far as he could determine, excepting such items of work which may have been unintentionally omitted or failed to receive approval of a government inspector or Burns & Roe".

The testimony with respect to what work, if any, Barber did on December 7, 8, and 9 is inconclusive, and it cannot be determined from the record whether this work may have been a part of the original contract, or corrections and repairs subsequent to the completion of the contract.[17]

■■ Finally, appellees contend that Austin's "Declaration" and Barber's affidavit must be totally disregarded, as "presumably" each "was in the court below", for the reason that they failed to comply with Rule 56(e). It is true, as appellees contend and appellants con-

---

16. In his "declaration", Austin explains his answer to interrogatory 56 as follows:

"Affiant further states that he, by his answer to interrogatory No. 56 referred to in the motion for summary judgment, misspoke himself in that he did not intend to state, nor is it a fact, that the last labor or material furnished by him to Project Mercury was October 25, 1960. It was affiant's intention by his answer to ratify the act of Robert Butts, his attorney, in preparing and serving the Miller Act notice and to state that the Miller Act notice represented the information which *Mr. Butts* had at the time the notice was prepared. In this regard affiant states that he conferred with Attorney Butts in November, 1960, at which time he informed Mr. Butts, in

some part, of the problems of his situation with Burns and Roe, Inc., and at that time informed Mr. Butts that the work of the subcontract had been substantially completed on or about October 25, 1960. Mr. Butts was not informed by affiant of affiant's return to the job to do the additional and corrective work, as this did not appear significant at the time."

17. In his deposition Austin suggests that the work on December 8 may have been weather stripping, but he was not positive. He recalls that Barber was "in Area 2, the Telemetry Building" on December 9; that he met Barber there and checked one job because Barber "was in the process of doing it. There was some honeycomb at the base of the tower foundation and he was dry-packing it with concrete".

cede, that the declaration is not an affidavit. It is a recital of facts followed by the statement, "I declare under penalty of perjury that the foregoing is true and correct". This would be sufficient under the California law,[18] and counsel for appellants state that the use of this form rather than an affidavit was inadvertent on the part of counsel.

No objection was interposed to the use of this declaration at the hearing on the motion for summary judgment, and counsel for both parties referred to the declaration in their oral argument to the trial court. The declaration would have been subject to a motion to strike. Had appellees made such a motion or otherwise objected to the use of the declaration, the defect could have been remedied by appellants filing an affidavit in lieu of the declaration.

Moreover, while Rule 56(e) does not state any different requirement for opposing affidavits than for the movant's affidavits, "the papers supporting the movant are closely scrutinized whereas the opponent's are indulgently treated". Bohn Aluminum & Brass Corp. v. Storm King Corp., 6 Cir. 1962, 303 F.2d 425. See also 6 Moore's Federal Practice 2123–6, § 56.15(3); p. 2336, § 56.22; Cammack v. Howard, D.C.Cir. 1946, 154 F. 2d 22.

Under these circumstances, and particularly in view of the fact that no pretrial conference was held, it is our opinion that neither the trial court nor this court is precluded from considering the declaration.[19]

The same is true of the Barber affidavit.[20] In any event, this affidavit simply corroborates the Austin deposition with respect to the days worked, and the deposition in itself is sufficient to raise this issue.

 Viewing the evidence as a whole and the inferences which may be drawn therefrom in the light most favorable to the plaintiff we cannot say that there is no genuine issue of fact with respect (1) to whether work was performed on or after December 7, 1960, and (2) whether any work which may have been performed on or after that date was required to complete the subcontract of the plaintiff Austin.

Judgment reversed.

---

18. C.C.P. § 2015.5.

19. The rule here applicable was stated in 3 Barron and Holtzoff, Federal Practice and Procedure 171: "An affidavit which fails to meet the requirements of Rule 56(e) may be stricken on motion. In the absence of a motion to strike or other objection the court may properly choose to consider a document which technically fails to conform to the rule."

20. Barber's affidavit contains a statement that he does not "waive his right which he may have to refuse to testify in the trial of the matter". The reason for including this statement was explained to the court by counsel for appellants in reading Barber's affidavit. We see no basis for Barber's claim of immunity from process. Should he have such right, it too could be waived. See Banco de Espana v. Federal Reserve Bank, 2 Cir. 1940, 114 F.2d 438.