**T & A PAINTING, INC., a California corporation, Plaintiff,**

**v.**

**UNITED STATES of America; John Lehman, Secretary of the Navy; J. McCollum, Contract–Officer; John G. Phelps dba Professional Coatings, Defendants.**

**No. C–87–1520 SAW.**

United States District Court, N.D. California.

Nov. 17, 1987.

would recover less than the jurisdictional minimum. *See Republic National Bank of New York*

Lois I. Beran, John H. Draneas & Assoc., P.C., Portland, Or., for plaintiff.

Joseph P. Russoniello, U.S. Atty., and George Christopher Stoll, Asst. U.S. Atty., San Francisco, Cal., for defendants.

## MEMORANDUM AND ORDER

WEIGEL, District Judge.

Plaintiff and defendants have filed cross motions for summary judgment. Because there is no genuine issue of material fact, disposition by summary judgment is appropriate.

*v. Eastern Airlines,* 815 F.2d 232 (2d Cir.1987).

This case arises under the bonding requirements of the Miller Act, 40 U.S.C. §§ 270a–270d. Plaintiff T & A Painting ("T & A") bid for two Navy painting projects in Guam.[1] In spite of having submitted the low bid for each project, T & A was rejected for each, on the ground that the net worth of its two proposed individual sureties was insufficient to cover the penal amount of the surety bonds required under the Miller Act. T & A contends that the proposed sureties' net worth was sufficient and that the government abused its discretion in failing to follow the evaluative procedure required by regulation.

The parties agree that 48 C.F.R. § 28.202–2(a) states the applicable standard by which defendants must evaluate acceptability of individual sureties. That regulation provides in pertinent part:

> The Contracting Officer shall determine the acceptability of individuals proposed as sureties. At least two individual sureties must execute the bond and the net worth of each individual must equal or exceed the penal amount of the bond. Contracting Officers shall consider the number and amounts of other bonds upon which a proposed individual surety is bound, and the status of the contracts for which such bonds were furnished, in determining the acceptability of the individual surety.

Applying this regulation, Navy contracting officers found that plaintiff's proposed individual sureties were unacceptable because their net worth did not equal or exceed the penal amounts of the required bonds. In calculating net worth, the contracting officers reduced it by the full penal amount of all performance and payment bonds for which there remained any unexpired warranty periods on the underlying contracts, regardless of whether those contracts had been completed according to plans and specifications, and, in the case of payment bonds, regardless also of whether payments had been promptly made. Plaintiff contends that this method of calculation does not conform to the requirements of the regulation. In particular, plaintiff contends:

(1) In considering the "number and amount of other bonds upon which the proposed individual surety is bound", the contracting officers should have excluded from calculation the penal amount of payment bonds for which payments by the contractor had promptly been made, regardless of any unexpired warranty periods; and

(2) The contracting officers should not only have considered the number and amount of other outstanding bonds, but should also have considered the "status of the contracts for which such bonds were furnished", and in particular, the contracting officers should have reduced the sureties' ascribed liabilities on outstanding performance and payment bonds, based on percentage of completion of the underlying contracts.

This Court reviews the contracting officers' determination only to decide whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law". 5 U.S.C. § 706(2)(A).

## I. NUMBER AND AMOUNTS OF OTHER PAYMENT BONDS

■ Unlike performance bonds, the express terms binding the surety on a payment bond do *not* extend the surety obligation for warranty periods under the contract. The terms of Standard Form 25–A, Payment Bond, 48 C.F.R. § 53.301–25–A, terminate the surety's obligation on condition that "the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract ..." Whether or not an unexpired warranty period exists is irrelevant.

■ Nevertheless defendants contend that an unexpired warranty period is significant. They argue that the contractor's

---

1. One of the two was cancelled by the Navy. Therefore the only project at issue in this case is Solicitation N62766–85–B–2170 (Painting Project).

liability for defects in the work performed extends for the warranty period.

That may be the case as to the liability of the *contractor*, but the surety's liability is not the same. The terms of the standard form surety agreement provide that after payment has been made by the contractor, the surety's obligations are terminated. Several Court of Appeals decisions, including a decision in this Circuit, imply that Miller Act payment bond obligations apply only to work performed under the original contract and not to subsequent work to repair defects.

*United States ex rel. Austin v. Western Electric Co.*, 337 F.2d 568 (9th Cir.1964), and *United States ex rel. Magna Masonry v. R.T. Woodfield, Inc.*, 709 F.2d 249 (4th Cir.1983), address the question of when the statute of limitations for a Miller Act payment bond claim begins to run. The Miller Act, 40 U.S.C. § 270b, provides that suits may be brought by "[e]very person who has furnished labor or materials in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under sections 270a to 270d of this title ..." but that no suit may be brought more than one year "after the day on which the last of the labor was performed or material was supplied" by the party suing. The Courts in *Western Electric* and *R.T. Woodfield* agreed that the statute begins to run when the last of the labor has been performed or material supplied pursuant to the *original contract* and not when labor or materials were used to repair defects. *Western Electric* at 572. *R.T. Woodfield* at 251. Subsequent repair work did not affect the running of the one-year limitations period. This holding

necessarily implies that, under the terms of the statute, the bond applies only to work under the original contract. Warranty work, however, is repair work.

█ Since the surety's liability ends when the contractor has made prompt payment for all labor and materials furnished under original contracts, the contracting officers should not have included the penal amounts of payment bonds for which the contracts were completed and all payments had been made. To do so was an abuse of discretion.[2]

## II. STATUS OF THE CONTRACTS

█ Plaintiff is correct in claiming that "status of the contracts" under 48 C.F.R. § 202–2(a) provides a factor for assessing acceptability of individual sureties independent of the "number and amounts of other bonds". The regulation mandates that "[c]ontracting officers *shall* consider" the number and amount of other bonds and the status of the underlying contracts. The regulation does not give contracting officers discretion to disregard any of the specified factors.

Defendants suggest that the contracting officer may exercise his discretion as to the relative weight to be attributed to each factor, even to the point of giving one factor absolutely no weight. That result may be within the contracting officer's discretion if each enumerated factor is given consideration. However, the affidavits of the contracting officers give no indication that they considered the status of the contracts, under any reasonable definition of "status".[3]

---

2. The Court notes that only upon completion of the contract may the contracting officer be certain that additional labor or materials will not be provided pursuant to the original contract. Until completion, the surety's obligation is open-ended. Therefore, it is not an abuse of discretion for contracting officers, in considering "the number and amount of other bonds" under which the proposed surety is bound, to include the penal amounts of payment bonds for which the underlying contracts have not been completed.

3. Plaintiff asserts that the common meaning of "status of a contract" within the commercial

surety bonding industry should apply in construing the regulation. Plaintiff offers the affidavit of Mr. O.W. LaPrade to show that two primary factors considered in the commercial bonding industry are the percentage of completion of a contract and the project or contractor's history. LaPrade Affidavit at 2. Defendants argue that industry standards are inapplicable, that "the 'status' of a contract has a different meaning for a contracting officer than it does for a commercial surety." Defendants' Memorandum in Support of Summary Judgment at 20. However, defendants do not explain what that "different meaning" might be. Moreover,

Disregarding the conclusory averments that the contracting officers did in fact consider "the status of the contracts for which such bonds were furnished", Affidavit of James F. McCollum, September 23, 1987, at ¶ 4.c., Affidavit of Gregory F. Mills, September 24, 1987, at ¶ 4.c., the only averments of fact relating to consideration of the status of contracts, as a factor independent of the number and amounts of other bonds, are found in paragraph 4.g. of each contracting officer's September 1987 affidavit. These identical paragraphs aver that each contracting officer "considered that the declared percentage of completion of the contracts for which the 15 bonds were furnished ranged from 0 to 100 percent[.]" But that statement could be made without examining the status of any of the 15 contracts. Each as a matter of logic, without individual examination, had to be either completed, not begun or partially completed. The consideration averred cannot conceivably satisfy the regulatory mandate.

## III. CONCLUSION

Because the surety's liability ends upon completion of the contract and prompt payments by the principal contractor, it was an abuse of discretion for the contracting officer to consider the penal amounts for payment bonds where these two conditions obtained.

As to the status of contracts, it was an abuse of discretion and a violation of 48 C.F.R. § 28.202–2(a) for the contracting officer to disregard that factor in assessing the acceptability of plaintiff's proposed individual sureties.

Accordingly,

IT IS HEREBY ORDERED that [as to plaintiff in this case,] defendants, in assessing the acceptability of proposed individual sureties under 48 C.F.R. § 28.202–2(a), are henceforth enjoined from including in their calculations of "the number and amounts

of other bonds upon which a proposed surety is bound", *Id.*, the penal amounts of payment bonds executed pursuant to the Miller Act, 40 U.S.C. §§ 270a–270d, for which the underlying contracts have been completed and for which the Principal contractor has promptly made all payments required under Standard Form 25–A, Payment Bond, 48 C.F.R. § 53.301–25–A.

IT IS HEREBY FURTHER SO ORDERED that defendants, in assessing the acceptability of proposed individual sureties under 48 C.F.R. § 28.202–2(a), must henceforth consider the "status of the contracts", *Id.*, as a factor independent of the "number and amounts of other bonds upon which a proposed individual surety is bound." *Id.*

IT IS HEREBY FURTHER SO ORDERED that defendants make a redetermination of the acceptability of plaintiff's proposed individual sureties on Solicitation N62766–85–B–2170 (Painting Project) in a manner consistent with this order, and if such redetermination results in acceptance of plaintiff's proposed individual sureties, IT IS FURTHER ORDERED that defendants award to plaintiff the contract for such Solicitation.

IT IS HEREBY ORDERED that in all other respects, plaintiff's motion for summary judgment is DENIED.

IT IS HEREBY ORDERED that defendants' motion for summary judgment is DENIED.

---

defendants do not deny that the two factors cited by Mr. LaPrade are primary factors considered in the industry. Through averments in their affidavits, defendants also implicitly admit that percentage of completion is a factor that contracting officers should consider. Affidavit of James F. McCollum, September 23, 1987, at ¶ 4.g., affidavit of Gregory F. Mills, September 24, 1987, at ¶ 4.g.