**UNITED STATES for the use and benefit of J & A LANDSCAPE COMPANY, a proprietor, Plaintiff–Appellant,**

v.

**REZA, INC., Dennis J. Amoroso Construction Company, Inc., a Joint Venture, R.P. Richards, Inc., a California corporation, Fireman's Fund Insurance Company, a California corporation, dba National Surety Corporation, Defendants–Appellees.**

No. 00–55082.

D.C. No. CV–99–00966–WBH/CGA.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 1, 2001.

Decided Jan. 30, 2002.

Before O'SCANNLAIN and PAEZ, Circuit Judges, and KING, District Judge.*

MEMORANDUM **

Plaintiff, J & A Landscape ("J & A"), appeals the district court's grant of summary judgment in favor of Reza Inc./Dennis J. Amoroso Construction Co., Inc. ("Reza"), R.P. Richards, Inc. ("Richards"), and Fireman's Fund Insurance Company ("Fireman's Fund") on J & A's Miller Act claim based on its conclusion that J & A had not provided timely notice as required by the Miller Act. We review a grant of

* The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

summary judgment de novo. *Botosan v. Paul McNally Realty*, 216 F.3d 827 (9th Cir.2000). Because there are genuine issues of material fact as to whether notice was timely, we reverse the district court's grant of summary judgment and remand for trial.

Reza contends that J & A's notice was untimely under the Miller Act's ninety day notice period because it was not provided "within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made...." 40 U.S.C. § 270b(a). To determine the date on which the ninety day notice period commenced, we apply the following test: "whether the work was performed and the material supplied as a part of the original contract or for the purpose of correcting defects, or making repairs following inspection of the project." *United States ex rel. Austin v. Western Elec. Co.*, 337 F.2d 568, 572–73 (9th Cir.1964) (internal quotation marks omitted).

J & A provided Reza with notice of its Miller Act claim on March 30, 1999. Under the above test, notice was timely if J & A performed work or supplied material, pursuant to its contractual obligations, on or after December 30, 1998. The district court concluded that J & A completed its contractual work on December 4, 1998. Accordingly, the district court further concluded that J & A's Miller Act claim was barred because notice was untimely.

In 1996, Reza, the prime contractor, entered into two contracts with the International Boundary and Water Commission, United States Section ("IBWC") for the construction of new sewage treatment plant facilities. Pursuant to its obligations under the prime contracts and the Miller Act, Reza acquired a payment bond from Fireman's Fund. 40 U.S.C. § 270b. Reza subcontracted with Richards who, in turn, subcontracted with J & A to perform irrigation and landscaping work at both facilities ("subcontracts"). Both subcontracts incorporated the terms of the prime contracts and the subcontracts between Reza and Richards.

Pursuant to the terms of the subcontracts, J & A was obligated to perform maintenance duties "throughout the progress of the work and during the Maintenance Period until the Final Acceptance of the work." The "Maintenance Period" was to begin on the first day after all work on the project was complete and accepted by the government and continue "for not less than 90 continuous calender days." J & A claims that its work was never "completely and finally accepted." Thus, J & A asserts that work it performed on both project sites in January and February of 1999 was pursuant to its contractual obligation to maintain its work. Reza claims, and the district court agreed, that the Maintenance Period commenced on September 5, 1998, and ended exactly ninety days later, on December 4, 1998. Accordingly, Reza contends that any work performed by J & A after December 4, 1998, was necessarily corrective or remedial in nature.

We agree with the district court that there is no factual dispute with regard to when the Maintenance Period commenced. However, there are factual disputes as to the date on which the Maintenance Period terminated and the date of Final Acceptance, and therefore, whether the work performed in January and February of 1999 was required as part of J & A's contractual obligation to maintain its work during the Maintenance Period until Final Acceptance. Accordingly, the district court erred in concluding that the notice provided by J & A to Reza was untimely and therefore barred its Miller Act claim.

Although the district court concluded the Maintenance Period terminated on December 4, 1998, there is no evidence, other

than the fact that this date is exactly ninety days after its commencement on September 5, 1998, to support such a conclusion. There is evidence, however, from which a reasonable trier of fact could infer that the Maintenance Period extended beyond December 4, 1998.

As noted above, the Maintenance Period was not contractually required to end ninety days after it began. In addition, an IBWC Inspection Report, dated December 10, 1998, discussed the possibility of extending the Maintenance Period. Statements in the report indicating that certain tasks were going to be completed late in the ninety-day period or outside the maintenance period imply that as of the date of the inspector's report the project was still in the Maintenance Period. A jury could reasonably infer that the Maintenance Period did not end on December 4, 1998, and that the work performed by J & A in January and February of 1999 was performed pursuant to its contractual obligation to maintain its work during the Maintenance Period.

There is also a factual dispute with regard to the date of Final Acceptance. J & A's obligation to maintain its work was to continue "during the Maintenance Period until Final Acceptance." J & A contends that its work was never "completely and finally accepted." Although Reza contends that both projects were accepted as "substantially complete" on November 20, 1998, the significance of this fact with respect to J & A's contractual duties is unclear. There is no evidence in the record indicating that "substantial completion" is the equivalent of Final Acceptance. Thus, there is a genuine issue of fact as to whether the work performed by J & A in January and February of 1999 was performed before Final Acceptance, and therefore, pursuant to its contractual obligations.

At the summary judgment stage, the district court was required to construe factual disputes in the light most favorable to J & A, the non-moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). By resolving the factual disputes in this case regarding both the date on which the Maintenance Period ended as well as the date of Final Acceptance in favor of Reza, the district court erred.

REVERSED AND REMANDED.