**SLOAN CONSTRUCTION COMPANY,**
Plaintiff(s)

v.

**AMERICAN RENOVATION AND CONSTRUCTION COMPANY,**
et al., Defendant(s).

Civil No. 02–1751 (JAG).

United States District Court,
D. Puerto Rico.

March 26, 2004.

Robert Millan, Millan Law Office, San Juan, PR, for Plaintiff.

American Renovation and Construction Company, Encinitas, CA, Pro Se Defendant.

Andres R. Nevares–Gonzalez, Nevares, Sanchez–Alvarez & Mendez, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On May 20, 2002 plaintiff Sloan Construction Company ("Sloan") brought suit against American Renovation and Construction Company ("ARC"), Soltek Pacific ("Soltek"), and St. Paul Fire and Marine Insurance Company ("St.Paul") for breach of contract and damages pursuant to Article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141, and invoking this Court's supplemental jurisdiction, pursuant to 28 U.S.C § 1367, on a claim for debt collection (Docket No. 1). On August 26, 2003, ARC moved for summary judgment against Sloan's claims against it (Docket No. 67). On that same date, Soltek and St. Paul moved for dismissal of Sloan's claims against them pursuant to Fed. R.Civ.P. 12(b)(6) (Docket No. 68). On September 3, 2003, the Court referred the motions to Magistrate–Judge Gustavo A. Gelpi for a Report and Recommendation (Docket No. 72). On February 11, 2004, Magistrate–Judge Gelpi recommended that Court deny ARC's motion for summary judgment as well as Soltek and St. Paul's motion to dismiss (Docket No. 83). For the reasons discussed below, the

Court **ADOPTS** in part and **REJECTS** in part the Magistrate–Judge's Report and Recommendation. Accordingly, the Court **DENIES** ARC's motion for summary judgment and **GRANTS** Soltek and St. Paul's motion to dismiss.

## FACTUAL BACKGROUND[1]

Sloan and ARC began their business relationship in 1998. Sloan was performing a heating, ventilation, and air conditioning subcontract for the U.S. Navy's Cascajo Point housing project. ARC, familiar with Sloan's work, approached Sloan to discuss ARC's interest in an upcoming Navy renovation project in the Manatee Bay and Caribe Breeze area, and whether Sloan was interested in performing the heating, ventilation, air conditioning, and plumbing subcontracts. On or about September 27, 2000, ARC solicited and received bids from Sloan for the subcontracts for the Manatee Bay project.

On April 12, 2001, ARC issued two "letters of intent" to Sloan. The language included in the two letters unequivocally states that ARC intended to award Sloan the subcontracts for the Manatee Bay and Caribe Breeze projects. The record does not reflect any further written correspondence between the parties regarding subcontracts. On August 9, 2001, Sloan sent a "letter of acceptance" to ARC after several failed attempts to "follow up [with ARC] on the performance of the contract." On or around May 25, 2001, ARC had signed its contract with the Navy. It did not, however, award Sloan the subcontracts for the Manatee Bay and Caribe Breeze projects.

In June 2001, St. Paul had issued a performance and payment bond binding itself to the United States Government to answer in the event of ARC's default. On May 28, 2002, St. Paul entered into a takeover agreement with the Navy for completion of the Manatee Bay project. On that same date, St. Paul entered into a completion contract with Soltek to perform the remaining work.

## DISCUSSION

A. *Standard for Reviewing a Magistrate–Judge's Report and Recommendation*

■ A District Court may, on its own motion, refer a pending motion to a U.S. Magistrate–Judge for a Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Local Rule 72(a). Pursuant to Fed.R.Civ.P. 72(b) and Local Rule 72(d), the adversely affected party may contest the Magistrate–Judge's Report and Recommendation by filing written objections "[w]ithin ten days of being served" with a copy of the order. *See* 28 U.S.C. § 636(b)(1). Since defendants have filed timely objections to the Magistrate–Judge's Report and Recommendation, the Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which specific objection is made. *See United States v. Raddatz*, 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Lopez v. Chater*, 8 F.Supp.2d 152, 154 (D.P.R.1998).

B. *Motion to Dismiss Standard.*

Pursuant to Fed.R.Civ.P. Rule 12(b)(6), a complaint may not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Brown v. Hot, Sexy, and Safer Prods., Inc.*, 68 F.3d 525, 530 (1st Cir.1995). The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor. *See Correa–*

---

1. The facts are taken from the Report and Recommendation.

*Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 51 (1st Cir.1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Tech.,* 950 F.2d 13, 22 (1st Cir.1991). Plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support their claim. *Id.* at 23 (*citing Correa–Martinez,* 903 F.2d at 52). Plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988).

### C. Summary Judgment Standard

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *See also Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52. (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment." *Id.* at 252. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

D. *ARC's Motion for Summary Judgment*

■ The Magistrate–Judge, after finding that a valid contract was perfected between Sloan and ARC, recommended that the Court deny ARC's motion for summary judgment. Pursuant to Fed. R.Civ.P. 72(b) and Local Rule 72(d), the adversely affected party may contest the Magistrate–Judge's Report and Recommendation by filing written objections "[w]ithin ten days of being served" with a copy of the order. *See* 28 U.S.C. § 636(b)(1).

ARC failed to raise any objections to the Magistrate–Judge's Report and Recommendation within the prescribed time period. Accordingly, any objections it could have are deemed waived. "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed.R.Civ.P. 72(b) advisory committee's note (1983). Therefore, this Court will review the Magistrate–Judge's Report and Recommendation only to ascertain whether or not the Magistrate–Judge's recommendation was clearly erroneous. *See Nogueras–Cartagena v. U.S.,* 172 F.Supp.2d 296, 305 (D.P.R. 2001)

■ Upon review of the Report and Recommendation and the motion for summary judgment, the Court finds that the Magistrate–Judge erred in finding the existence of a valid contract between ARC and Sloan. ARC and Sloan never signed a contract for work on the Manatee Bay project, but rather, were engaged in the process of negotiating such a contract when ARC, inexplicably, put an end to the negotiations. The letters of intent the Magistrate–Judge viewed as an acceptance of Sloan's bid are best interpreted as a pre-contractual agreement. The letters of intent merely stated that given a condition, the awarding of the Navy's contract to ARC, ARC would subcontract with Sloan.

■ Thus, the only claim available to Sloan is that established in the doctrine of culpa in contrahendo, which is "a cause of action founded in Puerto Rican tort law, binding parties to act in good faith during preliminary negotiations." *Shelley v. Trafalgar House Public Ltd. Co.,* 918 F.Supp. 515, 523 (D.P.R.1996)(*citing Prods. Tommy Muñiz, Inc. v. COPAN,* 113 D.P.R. 513, 529 (1982)); *see also Torres v. Garcia,* 19 P.R. Offic. Trans. 742, 747, 119 D.P.R. 698 (1987). In order to prevail under this theory, a plaintiff must prove "that the defendants' conduct was wrongful, deceitful or fraudulent." *Torres,* 19 P.R. Offic. Trans. at 744. However, "[t]he imposition of culpa in contrahendo liability must be done so restrictively." *Velazquez Casillas v. Forest Laboratories, Inc.,* 90 F.Supp.2d 161, 169 (D.P.R.2000)(*citing Torres,* 119 D.P.R. at 710, 19 P.R. Offic. Trans. at 754).

The parties have not placed the Court in a position at this time to be able to properly determine if ARC acted "wrongfully, deceitfully, or fraudulently" when it abandoned the negotiations with Sloan for the Manatee Bay project. Accordingly, this is an issue of material fact that should be decided by a jury and, thus, precludes the entry of summary judgment. Therefore, the Court hereby adopts the Magistrate–Judge's Report and Recommendation, as modified by this opinion, insofar as it denies its motion for summary judgment.

E. *Soltek and St. Paul's Motion to Dismiss*

The Magistrate–Judge summarily recommended dismissal of Soltek and St. Paul's motion to dismiss stating that it sets forth the same arguments presented by ARC in its motion for summary judgment. Upon *de novo* review of the record, the

Court finds that the Magistrate–Judge erred in this determination. Accordingly, the Court rejects this part of the Report and Recommendation and entertains the merits of the motion to dismiss.

■ If, on a motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), "matters outside the pleadings are presented to and not excluded by the Court, the motion may be treated as a motion for summary judgment and disposed of as provided in Rule 56." *Garita Hotel Ltd v. Ponce Fed. Bank,* 958 F.2d 15, 18 (1st Cir.1992). Because St. Paul and Soltek have attached a series of documents in support of their motion to dismiss which the Court will consider, the motion will be treated as a motion for summary judgment.

Soltek and St. Paul seek dismissal of Sloan's claims on four grounds: first, they argue that the Payment and Performance Bond St. Paul issued for the Manatee Bay project does not cover any liability ARC may have with Sloan; second, that plaintiff's allegations fail to establish any contractual or other relationship under which Soltek can be held liable; third, that plaintiff's claims that all three defendants conspired against it are time-barred; and lastly, that Sloan's debt collection claim must be dismissed as moot, inasmuch as payment has already been made to Sloan for any amounts due for its work in the Cascajo Point project. The Court agrees with their arguments.

1. *St. Paul's Payment and Performance Bond*

■ St. Paul issued its Payment and Performance Bond in accordance with the Miller Act, 40 U.S.C. §§ 3131–3134 (formerly 270a–270f). The Miller Act requires a performance and payment bond before "any contract of more than $100,000 is awarded for the construction, alteration, or repair of any public building or public work of the United States...." 40 U.S.C. § 3131.

> Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.

40 U.S.C. § 3133(b)(1). In other words, "[t]he purpose of the Miller Act is 'to protect persons supplying labor and material for the construction of federal public buildings in lieu of the protection they might receive under state statutes with respect to the construction of nonfederal buildings.'" *GE Supply v. C & G Enterprises, Inc.,* 212 F.3d 14, 17 (1st Cir.2000)(*quoting United States ex rel. Sherman v. Carter,* 353 U.S. 210, 216, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957)).

The language of the performance and payment bond here at issue unequivocally states that it was issued in compliance with the Miller Act. Moreover, there is no indication that it offers any liability coverage for claims other than payment to persons who are owed payment for furnishing labor, materials, or both, by ARC. By its own admission, Sloan did not perform any work or supply materials for the Manatee Bay and Caribbean Breeze projects. In fact, that is the basis for this action. Accordingly, the Court finds that Sloan cannot recover from St. Paul for any damages caused by ARC.

2. *Soltek's Liability*

■ Sloan's claims against Soltek arise from its unsubstantiated belief that ARC,

St. Paul, and Soltek all conspired to deny Sloan the Manatee Bay project subcontracts. In support of its claim, Sloan proffers an agreement entered into on February 14, 2001 which has among its signatories ARC, St. Paul, and Soltek. This agreement seems to have been prepared in anticipation of the Navy's awarding of the Manatee Bay project to ARC and as part of ARC's bid procurement. It is provided therein that, in the event of ARC's default on the Manatee Bay project, or any other of the listed projects, St. Paul had the right to complete the work and to employ Soltek to do so.

Sloan argues that St. Paul and Soltek, "went beyond the scope of the performance bond and are directly liable and linked through this previous agreement to take over, arrange, manage, administer and perform all aspects of the construction projects." (Docket No. 81 at 2). Furthermore, "as joint parties and successors upon takeover of the Manatee Bay project [they] had an obligation to honor the letters of intent of the plaintiff." (*Id.* at 3).

 The Court fails to understand, however, how the agreement between ARC, St. Paul, and Soltek in any way affected or interfered with Sloan's contractual relationship with ARC. There are no allegations of St. Paul or Soltek's involvement in the negotiations between ARC and Sloan. Moreover, St. Paul's taking over the project after ARC's default is not an act that goes beyond the scope of a performance bond. It is the essence of a performance bond that the surety guarantee completion of the project, even if it has do so itself. *See, e.g., U.S. v. Stern,* 13 F.3d 489, 491 n. 1 (1st Cir.1994).

Furthermore, when Soltek entered into the completion agreement with St. Paul, it assumed rights and obligations with respect to existing subcontracts. Again, the basis of this action is that ARC failed to perfect such a subcontract with Sloan

when it was awarded the Manatee Bay contract. Thus, because no contract existed between ARC and Sloan, the Court finds that Soltek did not assume any responsibilities towards Sloan and is not liable for any damages caused by ARC. Therefore, Sloan has failed to state a valid claim against Soltek and its claims against Soltek must be dismissed.

### 3. *Sloan's Conspiracy Claim*

 There is no evidence whatsoever on the record to support Sloan's claim that ARC, St. Paul, and Soltek conspired to deprive it from its contractual rights. Furthermore, the Court has found that the February 14, 2001 agreement is insufficient to establish that Soltek or St. Paul were somehow involved in the decision not to award Sloan with the subcontracts for the Manatee Bay project, or that they even knew of ARC's dealings with Sloan. Accordingly, the conspiracy claim is the product of mere speculation and does not justify any further discussion by this Court.

### 4. *The Cascajo Point Project Outstanding Debt*

 Sloan last worked on the Cascajo Point project on September 25, 2001. In the second amended complaint, Sloan alleged that it was owed $68,947.48 for work performed in the Cascajo Point project. Soltek and St. Paul have attached to their motions copies of cancelled checks totaling that amount. Thus, it would appear that by October 9, 2002, the date of the last check, Sloan had been paid in full for its work on the Cascajo Point Project and that claim is now moot. In the third amended complaint, however, Sloan claims that it is still owed $11,902.84 for change orders for the Cascajo Point project. Thus, it is not until July 9, 2003, almost two years after it stopped work on the project, that Sloan first advances a claim for this allegedly outstanding balance.

Pursuant to the Miller Act, "[a]n action brought under [ ] subsection [3133(b)] must be brought no later than *one year* after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4) (formerly § 270b(b)). Furthermore, a civil action "must be brought—(A) in the name of the United States for the use of the person bringing the action; and (B) in the United States District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy." 40 U.S.C. § 3133(b)(3) (formerly § 270b(b)).

The period of limitations for those change orders began to run on September 25, 2001. Thus, the claim is untimely as it was filed nearly two years after that date. Even assuming that the October 31, 2001 letter tolled the period of limitations, the claim should have been filed by October 31, 2002, and it is, therefore, untimely. Sloan cannot now attempt to collect that balance inasmuch as the claim was untimely filed.[2]

### CONCLUSION

For the foregoing reasons, the Court hereby **ADOPTS** in part and **REJECTS** in part the Magistrate–Judge's Report and Recommendation. Accordingly, the Court **DENIES** ARC's motion for summary judgment (Docket No. 67), and **GRANTS** St. Paul and Soltek's motion to dismiss (Docket No. 68).

IT IS SO ORDERED.

---

**2.** The Court notes that plaintiff also failed to comply with the statute's requirement that the claim be brought "in the name of the United States for the use of the person bringing the action." 40 U.S.C. § 3133(b)(3).