809 F.Supp. 523 (1992)
UNITED STATES FOR THE USE AND BENEFIT OF INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION 692, Michigan Electrical Employees Pension Fund, National Electrical Benefit Fund, Michigan Electrical Employees Health Plan and Bay City Joint Electrical Apprenticeship and Training Committee, Plaintiffs,
v.
HARTFORD FIRE INSURANCE COMPANY, Defendant.
Nos. 91-CV-10299-BC, 91-CV-10300-BC.
United States District Court, E.D. Michigan, N.D.
October 27, 1992.
*524 Sheldon M. Meizlish, Sheldon M. Meizlish & Rolland R. O'Hare, Detroit, MI, for plaintiffs.
Kevin S. Hendrick, Detroit, MI, for defendant Hartford in No. 91-CV-10299-BC.
James L. Mazrum, Gillard, Bauer, Mazrum, Florip & Smigelski, Alpena, MI, for defendant Fireman's in No. 91-CV-10300-BC.

MEMORANDUM OPINION
CHURCHILL, District Judge.
In 1989, R.C. Hendrick & Son, Inc., as prime contractor, entered into a contract for improvements of the Wurtsmith Air Base Rehabilitation Gym and Annex, Buildings 300 and 306.
The prime contractor retained Fortier Electric as subcontractor to perform subcontract electrical work on the project. Fortier engaged a number of electricians as employees to perform the subcontract work. The employees were members of International Brotherhood of Electrical Workers, Local Union No. 692. Fortier was a signatory to a collective bargaining agreement with the union and some of its employees were members of the local union.
Fortier breached the provisions of its collective bargaining agreement in at least two ways  (1) For work that took place from April, 1990 to December, 1990 it withheld union dues and COPE contributions from the wages of employees covered by the collective bargaining agreement, but failed to remit the same to the union; and (2) For the same period of time and with respect to the same employees, it failed to pay fringe benefits to the trustees of Michigan Electrical Employees Pension Fund, the National Electrical Benefit Fund, the Michigan Electrical Employees Health Plan, and the Bay City Joint Electrical Apprenticeship and Training Committee.
With respect to each of these funds, the Court assumes that the collective bargaining agreement required the employer to make an hourly or percentage contribution to the trustees of such fund without deducting the same from the employees' wages and that the trustees' duties with respect to such fund are governed by ERISA, 29 U.S.C. § 1001-1461 (1974) (amended 1990).
Under the Miller Act, 40 U.S.C. § 270a (1941) (amended 1978), a prime contractor on a federal construction project involving over $25,000 must post a payment bond to protect those who have a direct contractual relationship with either the prime contractor or a subcontractor. Section 2(a) of the Miller Act, as set forth in 40 U.S.C. § 270b(a), provides in part as follows:
[A]ny person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelop[e] addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or in *525 any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons.
The prime contractor provided a bond pursuant to the statute. Hartford Fire Insurance Company is surety on the bond.
The local union and the trustees commenced this suit as use-plaintiffs under the Miller Act to collect sums due the local union and the funds.[1]
The surety has moved for partial summary judgment arguing (correctly) that the earliest document furnished by the use-plaintiffs to the general contractor that may be construed as notice in compliance with the 90-day notice provision of the Miller Act was dated January 3, 1991. Accordingly, they argue, since six employees  Peasley, Federspiel, Franklin, Graichen, Rodgers and Botkin  ceased working on the project more than 90 days before that date there was a failure to comply with the 90-day notice requirement with respect to all monies due to the use-plaintiffs arising out of the employment of those six employees.
As a matter of law, the trustees of each fund are a distinct Miller Act use-plaintiff as is the union. The parties fail to recognize this in their pleadings and briefs.
It is the opinion of the Court that the issues raised by the surety's motion for partial summary judgment against the two categories of use-plaintiffs are controlled by different considerations.

I. UNION CLAIMS
The union argues that it was the union that supplied the labor to the subcontractor and that the last of such labor was supplied within 90 days of January 3, 1991. This argument was rejected by the 8th Circuit in United States ex rel. United Brotherhood of Carpenters and Joiners Local 2028, et al. v. Woerfel Corp., 545 F.2d 1148 (8th Cir.1976), and, in the opinion of the Court, rightly so.
For the purpose of ruling on this motion, the Court will assume that in some appropriate manner each employee has given the union authority to sue on its behalf to collect the union dues and COPE deduction. The union's claim is coextensive with and no greater than would be the individual employee's claim had it been necessary for the employee to file a claim for wages under the Miller Act. Each individual employee would be required to give the statutory notice within 90 days of the time he last worked on the project. See, Woerfel, supra.
The surety is entitled to partial summary judgment against the union for all of the claims arising out of work performed by the six named employees.

II. TRUSTEE CLAIMS
Woerfel, however, did not involve fringe benefit claims by the trustees of benefit funds and it provides no support for the surety's argument for partial summary judgment against the trustees.
With respect to the claims asserted by the trustees as use-plaintiffs under the Miller Act, the surety argues that the January 3, 1991 notice is effective only with respect to the employees who worked within 90 days of that date. The trustees argue that the notice is effective if any covered employees worked within the 90-day period.
It is established that the Miller Act does not limit recovery to wages and that contributions to welfare funds are a part of compensation to be paid for labor. See, United States ex rel. Sherman v. Carter, 353 U.S. 210, 218-220, 77 S.Ct. 793, 793, 797-799, 1 L.Ed.2d 776 (1957).
In Carter, the Supreme Court looked to the collective bargaining agreement to determine that the trustees were in the same position as an assignee. If Carter was the sole authority to support the trustees' argument, they would be hard pressed to avoid partial summary judgment with respect to the six named employees because *526 the trustees' claim would be based upon an assignment theory. Carter, however, was decided before ERISA.
ERISA did not change the Miller Act, but it did change the relationship between the subcontractor and the trustees of the trust funds. The prime contractor, subcontractor, surety and trustees are all deemed to be aware of the nature of this relationship when they undertake their respective obligations.
Under ERISA, the trustees not only have a contractual right to enforce payment of contributions to trust funds, they have a statutory right and duty to do so. They are not dependent on an assignment, either actual or constructive.
The obligation to pay fringe benefits to the trustees occurs simultaneously with the performance of work. The trustees' rights and duties are the same with respect to all covered employees. As stated in I. above, for the purpose of earning wages, it is reasonable to say that the employees provide their labor individually. For the purpose of earning contributions to the benefit funds it is reasonable, for the following reasons, to say that they provide labor collectively.
First, the Miller Act is to be construed liberally. Carter, 353 U.S. at 216, 77 S.Ct. at 796-797. To construe the Miller Act as suggested by the surety would place an undue administrative burden on the trustees and would be inconsistent with the public policy considerations underlying the Miller Act and ERISA.
Second, as noted in United States ex rel. Laborers' Pension Trust v. Safeco, 707 F.Supp. 286 (E.D.Mich.1988), "notice is timely if given within ninety days after the performance of the last labor or supply of the last material `for which such claims [sic] is made.'" Safeco, at 288, citing, United States ex rel. Honeywell, Inc. v. A & L Mechanical Contractors, Inc., 677 F.2d 383, 385 (4th Cir.1982). Although the central issue in that case was whether notice given before all work was completed was valid, relying on the cited language, the Court ruled that a July 20 notice was effective to entitle trustees to collection against the bond for contributions arising from work performed between March 3 and May 31  a period that extended 140 days before July 20.[2] Of application here is the concept that a "claim" may cover more than a single employee or incident  it may cover several employees over a period of time. The notice was considered timely because it was made within 90 days after the last of the labor was performed for that "claim." Here the "claim" is for contributions due for a period of time between April 1990 and December 1990. The notice was given within 90 days after the last of the labor for which this claim was made.
It is the opinion of the Court that the trustees' notice was timely with respect to all fringe benefits due for the period beginning in April 1990.
An order granting the surety's motion for partial summary judgment against the union as use-plaintiff will be entered. The order will also provide that the surety's motion for partial summary judgement against the trustees as use-plaintiffs will be denied.
ORDER GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
For reasons set forth in a Memorandum Opinion filed this date, the defendant's motion for partial summary judgment is granted in part and denied in part as follows:
Hartford Fire Insurance Company's motion for summary judgment against International Brotherhood of Electrical Workers, Local Union No. 692, with respect to union dues and COPE withholdings for employees Peasley, Federspiel, Franklin, Graichen, Rogers and Botkin is granted.
Hartford Fire Insurance Company's motion for partial summary judgment that the Trustees of Michigan Electrical Employee *527 Pension Fund, the National Electrical Benefit Fund, the Michigan Electrical Employees Health Plan and the Bay City Joint Electrical Apprenticeship and Training Committee did not give timely notice under the Miller Act with respect to certain employees is denied.
NOTES
[1] The exhibits suggest that there may be a fifth fund with a potentially valid claim whose trustees did not join in the suit as a use-plaintiff.
[2] Whether the employment of any covered employees was terminated more than 90 days before July 20 does not appear to have been a factor in the Court's well reasoned opinion.