# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3183

_____

Five Rivers Carpenters District Council Health and Welfare Fund, and Royce Peterson and Mike Novy as trustees; Five Rivers Carpenters District Council Educational Trust Fund, and David Unzeitig and Robert Doubek, trustees

*Plaintiffs - Appellees*

v.

Covenant Construction Services, LLC; North American Specialty Insurance Company

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern

_____

Submitted: May 8, 2024
Filed: August 20, 2024

_____

Before SMITH, KELLY, and KOBES, Circuit Judges.

_____

KELLY, Circuit Judge.

Covenant Construction Services, LLC and its surety, North American Specialty Insurance Company (collectively Defendants), appeal the district court's[1]

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

grant of summary judgment in favor of the Five Rivers Carpenters Health and Welfare Fund and Education Trust Fund, and their respective trustees (collectively, the Funds) on their claim seeking unpaid fringe-benefit contributions under the Miller Act, 40 U.S.C. §§ 3131–3133 (2006). We have jurisdiction under 28 U.S.C. § 1291, and affirm.

I.

Covenant was the prime contractor on a federal construction project for the U.S. Department of Veterans Affairs (VA) facility in Iowa City, Iowa. Because this was a federal construction project, Covenant was required to obtain a "payment bond" under the Miller Act. See § 3131(b)(2). The Miller Act is intended "to provide security for payment of those who supply work or materials for the prosecution of federal projects to which state law lien rights do not attach." United States ex rel. Olson v. W.H. Cates Constr. Co., 972 F.2d 987, 989 (8th Cir. 1992) (citing 40 U.S.C. § 270a, now codified at §§ 3131–3132). A payment bond ensures that suppliers of labor and material on federal projects are fully protected in carrying out contracted-for work. See § 3131(b)(2). In this case, Covenant obtained surety for its payment bond obligation from North American Specialty Insurance Company.

In September 2018, Covenant subcontracted with Calacci Construction Company, Inc. to supply carpentry labor and materials necessary to complete the VA project. Calacci entered into a collective bargaining agreement (CBA) with two regional unions representing the majority of its laborers—North Central States Regional Council of Carpenters and the United Brotherhood of Carpenters & Joiners. As the signatory employer to the CBA, Calacci agreed to pay fringe-benefit contributions based on each hour that its laborers worked, to be directly deposited to the Funds.[2]

---

[2]The Funds are multiemployer employee fringe-benefit funds, as defined under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1002(3), (37), and organized under the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 186(c)(5).

-2-

Under both the CBA and trust agreements with the unions, the Funds had the express authority to receive, collect, and demand payment of any delinquent fringe-benefit contributions owed by Calacci.[3] Calacci also agreed in the CBA that if it failed to pay benefit contributions owed "for the duration of all work to be performed," then it must "pay all attorney fees and costs incurred in collecting such sums that are due" to the Funds. In addition, Calacci would "bear the accounting costs incurred by the Trustees or the Union" in the collections process, including a 10 percent late fee.

Despite multiple demands, Calacci, refused to remit the benefit contributions owed to the Funds through June 18, 2021, the last day of Calacci's union employees' labor on the project. On September 10, 2021, counsel for the Funds emailed an employee of Covenant to inform them that the Funds "[would] be filing a Miller Act Notice." The Funds requested a copy of Covenant's Miller Act "payment bond and surety's contact information." That same day, Covenant's attorney responded, saying he "represent[s] Covenant Construction on this matter" and that all future correspondence should be directed to him.

After the Miller Act notice was delivered to Covenant's attorney as instructed, he emailed the Funds' counsel to confirm that he received the documents and had

---

[3]The district court correctly concluded that the Funds have standing to bring this suit. See United States ex rel. Sherman v. Carter, 353 U.S. 210, 214 (1957) ("The trustees had the sole power to demand and enforce prompt payment of employer contributions," consistent with the trust agreement, and thus "have an even better right to sue on the bond."); United States ex rel. Int'l Bhd. of Elec. Workers, Loc. Union 692 v. Hartford Fire Ins. Co., 809 F. Supp. 523, 526 (E.D. Mich. 1992) ("Under ERISA, the trustees not only have a *contractual* right to enforce payment of contributions to trust funds, they have a statutory right and duty to do so. They are not dependent on an assignment, either actual or constructive."); 29 U.S.C. §§ 1104(a), 1132 (obligating trustees, as fiduciaries of a multiemployer benefit plan within the meaning of ERISA, to "discharge [their] duties with respect to a plan" and empowering them to bring suit on behalf of beneficiaries to recover any unpaid contributions).

"stamped the receipt date on each page to confirm [they] received them [on] Sept. 16, 2021." He also requested "a detailed breakdown of the amounts claimed" and supporting documentation to evaluate the claim, which the Funds provided to him.

Covenant and its surety, however, never paid the delinquent contributions from their payment bond on behalf of Calacci. As a result, the Funds filed suit under the Miller Act to collect from Defendants the unpaid contributions plus liquidated damages, interest, costs, and reasonable attorneys' fees. Defendants and the Funds filed cross-motions for summary judgment. The district court denied Defendants' motion, granted the Funds' motion, and entered judgment in the Funds' favor. Defendants now appeal.

## II.

"We review the district court's resolution of cross-motions for summary judgment *de novo*." Owners Ins. Co. v. Fid. & Deposit Co. of Md., 41 F.4th 956, 958 (8th Cir. 2022) (citation omitted). Defendants argue that the district court erred in determining that the Funds properly served notice on Covenant under the Miller Act, in deciding that the notice was timely as to all 21 laborers on the project, and in awarding the Funds liquidated damages and attorneys' fees. We address each argument in turn.

## A.

Under § 3133(b)(2) of the Miller Act, "[a] person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor." Written notice of a Miller Act claim must be given "within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made." Id. Notice must be served "by any means that provides written, third-party verification of delivery to the contractor at any place the

contractor maintains an office or conducts business or at the contractor's residence." § 3133(b)(2)(A). The purpose of the notice provision is "to assure receipt of the notice, not to make the described method mandatory so as to deny right of suit when the required written notice within the specified time had actually been given and received." Fleisher Eng'g & Constr. Co. v. United States ex rel. Hallenbeck, 311 U.S. 15, 19 (1940). "Congress intended to provide a method which would afford sufficient proof of service when receipt of the required written notice was not shown." Id.

Defendants claim "the Funds never mailed or delivered any Miller Act notice to Covenant" because they sent it to Covenant's attorney rather than to Covenant directly. Defendants do not allege Covenant was unaware of the Miller Act notice. Instead, they assert the Funds were noncompliant with the requirements of § 3133(b)(2) and that Covenant's attorney was neither "the contractor" nor expressly authorized to accept service on Covenant's behalf. Defendants further contend that the district court erroneously concluded that "[t]hrough his correspondence with the Funds' counsel, Covenant's attorney held out he had authority to accept the Miller Act notices on Covenant's behalf. He did nothing to recant this apparent authority."

It is undisputed that Defendants received the Funds' written Miller Act notice, which lessens the need for strict adherence to the method of service under § 3133(b)(2), because the purpose of the notice provision is ensuring receipt. See Fleisher, 311 U.S. at 18–19. Covenant's attorney went out of his way to confirm that he received the written notice on behalf of both Covenant and North American, going so far as to time-stamp the date of receipt. Cf. United States ex rel. Am. Radiator & Standard Sanitary Corp. v. Nw. Eng'g Co., 122 F.2d 600, 602 (1941) (holding that merely sending invoices to a subcontractor does not put the contractor on notice of the Miller Act claim and could not substitute as actual written notice to the contractor). The challenge raised here is limited to whether—as a matter of law— the notice complied with § 3133(b)(2) when it was sent to Covenant's attorney, rather than directly to Covenant or an authorized agent of Covenant.

We conclude that the Funds sufficiently complied with the Miller Act. Defendants analogize to service of legal documents, but the initial notice requirement under § 3133(b)(2) is distinct from service of a civil summons or legal process. As Defendants acknowledge, it is a jurisdictional "condition precedent" to filing a lawsuit under the Miller Act, not a method-of-service requirement. See Am. Radiator, 122 F.2d at 602. Not only was the mailed notice sufficient because Covenant had "actually been given and received" it, see Fleisher, 311 U.S. at 19, but Covenant's attorney intervened, represented that he had authority on behalf of Covenant to receive notice, and instructed the Funds to communicate directly with him. The district court did not err in concluding that notice was properly provided.

B.

Defendants next argue that the Funds' written notice was untimely. The last day of labor on the VA project was June 18, 2021, and the Miller Act notice was received and time-stamped by Covenant's attorney on September 16, 2021. The notice alleged delinquent benefit contributions based on the collective carpentry labor of 21 Calacci employees between April 20, 2020, through June 18, 2021.

According to Defendants, however, the 90-day deadline for timely filing notice under § 3133(b)(2) is to be judged individually for each laborer. And, if that is correct, only three of the 21 Calacci union employees' last day of labor on the VA project falls within the 90-day window. Defendants contend that the Funds can recover damages for only those three employees.

As noted above, Miller Act notice must be provided "within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made." § 3133(b)(2). The Funds' claim against the bond is based on damages "common to the entire membership" of the Fund participants and "shared by all in equal degree." See U.S. ex rel. United Bhd. of Carpenters & Joiners Loc. Union No. 2028 v. Woerfel Corp., 545 F.2d 1148, 1152 (8th Cir. 1976) (observing that there, relief sought was neither).

-6-

And while the statute references the last date of labor based on a singular "person," it is reasonable to conclude that laborers collectively provide labor for purposes of fringe-benefit fund contributions. See Hartford Fire, 809 F. Supp. at 526. In this sense, a claim for fund contributions—a collective claim—is distinguishable from a claim for individual wages, which are "peculiar to the individual member concerned." Woerfel, 545 F.2d at 1152 (citation omitted).

Notice of delinquent fund contributions, therefore, must be given within 90 days of the last day of the collective labor on the VA project. And as such, the Funds' "'claim' may cover more than a single employee or incident—it may cover several employees over a period of time." Hartford Fire, 809 F. Supp. at 526. So long as notice "was made within 90 days after the last of the labor was performed for that 'claim'"—as occurred here—it is timely. Id. The district court did not err by concluding that Plaintiffs timely filed their Miller Act notice within 90 days of the last day of labor performed on the project and the Funds are thus entitled to the past-due fringe-benefit contributions for all 21 laborers.

C.

Finally, Defendants contend that the court erred in awarding the Funds liquidated damages and attorneys' fees. Under the Miller Act, plaintiffs may recover "the amount unpaid at the time [their] civil action is brought and may prosecute the action to final execution and judgment for the amount due." § 3133(b)(1).[4] As we have recognized, this statutory language does "not explicitly provide for the recovery of attorneys' fees or interest." Owners, 41 F.4th at 959; see also F.D. Rich Co. v.

---

[4]Before it was amended in 2002, "the Miller Act provided that a subcontractor could sue on a payment bond after failing to receive payment for labor or material and 'prosecute said action to final execution and judgment for the *sum or sums justly due him*.'" Owners Ins. Co. v. Fid. & Deposit Co. of Maryland, 41 F.4th 956, 959 (8th Cir. 2022) (emphasis added) (citing 40 U.S.C. § 270b(a) (2001)). The above italicized language was amended to "the amount due," see § 3133(b)(1), but that "was not intended to work a substantive change." Id. (citation omitted).

United States ex rel. Indus. Lumber Co., 417 U.S. 116, 126 (1974) (determining that the Miller Act does not "explicitly provide for an award of attorneys' fees to a successful plaintiff"); cf. 29 U.S.C. § 1132(g) (giving courts discretion to award "reasonable attorney's fees and costs" to fiduciaries in an action *brought under* ERISA for the collection of delinquent benefit contributions). And, generally, "the American Rule"—"that each party should bear the costs of its own legal representation" and thus, attorney's fees are not recoverable as damages absent an express directive from Congress—applies to Miller Act claims. See F.D. Rich, 417 U.S. at 130–31.

We have, however, upheld an attorneys' fee award on a claim similar to a Miller Act claim, but brought under the Capehart Act, 42 U.S.C. § 1594a. There, the claim was based on the express language in a bond contract between a subcontractor and its supplier that attorneys' fees were "part of the purchase price of the materials and are sums justly due." See D&L Const. Co. v. Triangle Elec. Supply Co., 332 F.2d 1009, 1012–13 (8th Cir. 1964); see also Owners, 41 F.4th at 959 (citing United States ex rel. Maddux Supply Co. v. St. Paul Fire & Marine, Ins. Co., 86 F.3d 332, 336 (4th Cir. 1996) (per curiam) as a Miller Act case that presented similar attorneys' fees questions); Sherman, 353 U.S. at 220–21 (upholding the award of attorneys' fees and liquidated damages on a payment bond based on collective bargaining, which obligated the supplier to make benefit contributions to the union's trust fund and, pursuant to the trust fund agreement, to pay any attorneys' fees and costs necessary to recover delinquent contributions).

Defendants do not dispute that the CBA obligated Calacci, as signatory employer, to pay the Funds' attorneys' fees and liquidated damages in connection with collection of benefits contributions owed to the Funds. Rather, they argue that the CBA does not obligate them to pay the Funds' attorneys' fees or liquidated damages from the payment bond because Covenant is not a signatory employer to the CBA. Defendants contend that without an express agreement that Covenant would use its payment bond to pay for the Funds' attorneys' fees and costs in the

recovery of Calacci's delinquent benefit contributions, the Miller Act does not otherwise obligate Covenant to pay them.

Even assuming Covenant is not statutorily obligated to pay attorneys' fees and liquidated damages from its payment bond under the Miller Act, Calacci, as signatory to the CBA and the supplier of labor, expressly agreed with the union and its Funds to pay them. "The obligation of the surety and contractor includes amounts owed by subcontractors to their suppliers." Maddux, 86 F.3d at 334 (citation omitted). As such, "[s]everal circuits have held . . . that interest and attorney's fees are recoverable if they are part of the contract between the subcontractor and supplier." Id. at 336 (collecting cases). Here, Calacci is obligated to pay attorneys' fees and liquidated damages to the Funds under the terms of the CBA; and, by subcontracting with Calacci, Covenant is liable for the amount due under that obligation. See D&L, 332 F.2d at 1013. Defendants never allege that the terms of their payment bond agreement reflect otherwise. Moreover, granting the recovery of attorneys' fees and liquidated damages from the payment bond compensates the Funds in full for the "amount due" to them for their agreed-upon work on the VA project, and is consistent with the purpose of the Miller Act. See § 3133(b)(1); D&L, 332 F.2d at 1012–13; see also Sherman, 353 U.S. at 216 ("The Miller Act . . . is highly remedial in nature. It is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects." (internal citations omitted) (quoting Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co., 322 U.S. 102, 107 (1944)).

We affirm the judgment of the district court.

_____